Dorothy A. **MORGAN** et al., Plaintiffs,

v.

Alfred C. **KENNEDY** et al., Defendants.
Civ. No. 71–0–253.

United States District Court,
D. Nebraska.
Sept. 9, 1971.

**862**

Charles I. Scudder and Thomas A. Brown, Omaha, Neb., for plaintiffs.

C. S. Brubaker, W. L. Strong, and Merlin E. Remmenga, Omaha, Neb., for defendants.

## MEMORANDUM

DENNEY, District Judge.

This matter came before this Court on remand from the three judge court convened to hear the case [Filing #70]. The following motions have been filed and are pending at this time: defendants' motion to dismiss for failure to state a claim or that the Court lacks subject matter jurisdiction [Filing #46]; defendants' motion to dismiss as to their individual capacities [Filing #47]; defendants' motions to strike from certain of the affidavits all portions which are opinions or conclusions [Filings #48, 62, 72]; defendants' motion to strike from the pleadings those statutes not specifically dealing with termination of gas and water services for failure to pay the gas and water bills [Filing #49] and defendants' objection to the convening of the three judge court and to dismiss as a class action [Filing #51].

The Court does not rule upon all the motions, finding it unnecessary to do so in view of its ruling on Filing #46.

The facts in this matter are not in dispute and have been submitted to the Court in stipulation form. Basically, the matter involves an attack by plaintiffs on the constitutionality of the provisions of the Nebraska statutes providing for shut-off of services by the Metropolitan Utilities District of the City of Omaha for non-payment of accounts. Plaintiffs have limited their class to all domestic users, excluding others such as commercial consumers. Jurisdiction for this Court is alleged as arising under 28 U.S.C.A. § 1343(3), (4), which provides for original jurisdiction of this Court in all suits authorized by 42 U.S.C.A. § 1983. The specific statutes in question are Sections 14–1015, 14–1103 and 14–1109 of the Reissue Revised Statutes of Nebraska of 1943.

The Court begins by complimenting counsel for plaintiffs on the quality of their brief and presentation to Court. The Court greatly appreciates this effort.

The Court would like to state that it recognizes that a real problem exists here. This Court has personal knowledge, from experience, of the immense difficulties of the poor in their day-to-day existence. The situation now is not as threatening as it will become in the winter months. The shutting off of the heat in sub-zero weather to a mother and her eight children, as is the situation of one of the plaintiffs, cannot help but have a very damaging effect upon their lives. The Court notices that last winter a similar situation resulted in several near-deaths in this city. However, our system of government is one of checks and balances, it having been early recognized by James Madison in the *Federalist* that power is of an encroaching nature and it ought to be effectually restrained from passing the limits assigned to it. The Courts have been called upon from time to time to check the other branches of government from exceeding their limits. Here, the Court must make such checks against itself, for it fears to invalidate the statutes in question would require the Court to legislate, which it must not do.

The recognition of constitutionally protected rights has continued to expand in recent years. It should be noted, however, that the framers of our Constitution did not seek by the Constitution to create rights in men but to protect those rights of men described in the Declaration of Independence as inalienable rights with which the Creator, not man, has endowed him. The framers, via the Constitution, were carrying out the mandate of the Declaration to institute government to secure and protect those rights to Americans.

■ Although the Supreme Court has been called upon from time to time to construe the intent of the framers as to those rights enumerated in the Constitution which has infrequently resulted in the recognition of rights, it has been peculiarly the function of the Legislature to create new rights. These rights have been most recently described as entitlements by the Supreme Court in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 [1970], citing as examples franchises, farm subsidies, routes for airlines, channels for television stations and welfare benefits.

The Court views the class as made up of three distinct types of non-payers.

(a) Those who haven't paid because they are financially unable to do so—the poverty persons;

(b) Those who haven't paid through neglect or inadvertence;

(c) Those who simply won't pay.

Plaintiffs' strongest case is made out for those persons in poverty situations. The claims of the other two groups of persons as delineated by the Court appear to be repugnant to our free enterprise economic system. People who are financially able to pay for the cars they drive, the food they eat, and the water they drink, should do so in our society. We have not yet become a welfare state.

■ Consistent with the landmark decision in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 [1961], the lower courts such as the court in Marland v. Heyse, 315 F.2d 312 [10th Cir. 1963], and Basista v. Weir, 340 F.2d 74 [3rd Cir. 1965], have recognized that the statutory prerequisites to liability under 42 U.S.C. § 1983 are (1) that the defendants act under color of state or local law and (2) that the plaintiffs be subjected to a deprivation of a right, privilege or immunity secured by the Constitution and laws. The Court is satisfied that plaintiffs have met the first requirement and will pass on the question of deprivation of constitutionally guaranteed rights.

■ Whether the second requirement, that of privilege and immunities secured by the Constitution, is met must be gauged in light of the recent Supreme Court decisions on Due Process, since plaintiffs have argued that these statutes should be struck down on 14th Amendment grounds. The two recent Supreme Court cases most nearly applicable to the case at bar are *Goldberg*, supra, and Boddie v. State of Conn., 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 [1971].

In *Goldberg*, the Court held that welfare benefits could not be terminated without a pre-termination hearing and satisfy due process requirements. The burden on the State was simply not as great as the possible grievous loss to the recipient. However, the Court noted that "such benefits are a matter of statutory entitlement for persons qualified to receive them."

The Court, in *Boddie*, held that in view of the basic position of the marriage relationship in our society and the state monopolization of the means for dissolving that relationship, due process of law prohibits a state from denying, solely because of inability to pay court fees and costs, access to its courts to indigents who in good faith seek judicial dissolution of their marriages.

Assuming that, as plaintiffs' state in their brief, "life", as used in the 14th Amendment, must include the necessities of life, this does not mean that the 14th Amendment places an affirmative burden on the State to provide life. The 14th Amendment is prohibitory in nature, prohibiting the State from *depriving* any person of life without due process. Therefore, once the State has, through its legislature, set up a system of benefits or entitlements, then the Court may properly pass upon whether that system as constructed violates the due process requirements of the Constitution and this is what the Court did in *Goldberg*. There is no such statutory entitlement to free utilities service per se in Nebraska.

The existence or non-existence of welfare is the exclusive province of the legislature. The State of Nebraska has set up a welfare benefits system and the amount entitled to each qualifying person is based in part on the anticipated utility bills of that person. This shows that the State as to its welfare recipients has recognized a need for utility services. Recognition of a need is not recognition of a right to have that need satisfied. The State has also recognized the need for clothes, but that does not imply that indigents have a right to free clothes. Recognition of a right to free utility service must be more and would include recognition as to those persons who are indigent but for some reason do not qualify for welfare. Until that right is recognized by the State of Nebraska, this Court is limited.

In *Boddie*, the State established a monopoly over the system to supply not only a need but a right, having recognized divorce on certain grounds as a need and a right. The difference here is the State has established only a monopoly over a need, and is, in fact, little different in operation than a private monopoly over a need. Yet, the Courts have never held that private monopoly must supply its products free of charges.

The Court cannot create a right without a constitutional or statutory basis and the Court perceives no constitutional or statutory right to free utility service. The second requirement for jurisdiction under 42 U.S.C.A. § 1983 has not been met. Defendants' motion to dismiss for failure to state a claim upon which relief can be granted must be sustained, and an order will be entered this date in accordance with this Memorandum.

The Court might suggest that the solution to the problem, at least so far as the welfare recipient is concerned, may be effected by the State by simply paying direct to MUD the utility costs instead of making it part of the monthly welfare check, which gives the indigent a chance to spend the funds for other than for what they were allocated.