John **LAMB** and Guadalupe Lamb, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Clifford W. **HAMBLIN**, Individually and as General Manager of the Water Department of the City of St. Paul, et al., Defendants.

No. 3–72–Civ.–115.

United States District Court,
D. Minnesota,
Third Division.

Nov. 30, 1972.

Roger S. Haydock, Michael M. Wolff, Dolores C. Orey, St. Paul, Minn., for plaintiffs.

Jerome J. Segal, Asst. City Atty., City of St. Paul, St. Paul, Minn., for defendants.

## MEMORANDUM & ORDER

DEVITT, Chief Judge.

Plaintiffs bring this class action under 42 U.S.C. § 1983 alleging that defendants' rules and procedures for terminating water service violate equal protection and due process standards. Plaintiffs contend that utility services fall within constitutional protections; that they are entitled to notice and an opportunity to be heard before service is terminated; and that defendants' practice of terminating service to those who are not legally obligated to pay for such service violates their right to equal protection of the laws.

The matter has been submitted on cross motions for summary judgment. The Court has jurisdiction pursuant to 28 U.S.C. § 1343(3) and (4).

The facts are not in dispute. The St. Paul Water Code provides no notice or opportunity for a hearing prior to termination of water service and allows for termination whenever a building is indebted to the Board of Water Commissioners. In accordance with these regulations defendants terminated plaintiffs' water service after they refused to pay a bill incurred by a former tenant. Pursuant to its practice, the Water Department sent notice of its intent to terminate service in the form of bills, but did not afford a forum where plaintiffs could have disputed their obligation on the bills. Attempts at informal resolution of the dispute proved fruitless. Plaintiffs instituted this action for declaratory and injunctive relief.

Initially, the Court must determine whether plaintiffs' action may be maintained as a class action. The named plaintiffs have moved from the premises which are the subject of this action. Thus, the issue is moot unless members of a class remain to prosecute it. *See* Ihrke v. Northern States Power Co., 459 F.2d 566 (8th Cir.), jud'm vacated as moot, 409 U.S. 815, 93 S.Ct. 66, 34 L.Ed.2d 72 (1972); Thomas v. Clarke, 54 F.R.D. 245, 252 (D.Minn. 1971).

Plaintiffs originally defined their class as "all persons who are consumers of water services from the Water Department of the City of St. Paul." This definition was too broad. Plaintiffs have since sought to limit their class to those "whom defendants have threatened with termination of water services or who have had or will have their water services terminated." Even this definition is too broad, however, as those who "will have" service terminated are unidentifiable and lack standing to bring suit in their own right. Thomas v. Clarke, *supra*, 54 F.R.D. at 249.

Nevertheless, we held in *Thomas* that a federal court can define a class in a manner that will allow utilization of the class action procedure. Limitation of

the class to those who are under present threat of termination or who are now without service because of defendants' summary termination procedures serves this end and the Court so limits it. While the exact number of persons in this class is unknown, it is sufficiently large to satisfy the numerosity requirement of Rule 23(a), Federal Rules of Civil Procedure. At oral argument counsel for defendants estimated that 100 shut-offs per month occurred. In addition, the other requirements of Rule 23(a) are met. The representative plaintiffs share common questions of law and fact with the class; their claims are typical of the claims of other members and they have adequately represented the interests of the other members. Moreover, the grievance which the class members assert falls within the letter and spirit of Rule 23(b)(2). They complain that defendants have acted in a way which has similarly affected each member of the class. And, having abandoned their damage claim, they seek declaratory and injunctive relief only. Thus, the action is properly a class action, and it is not moot. Thomas v. Clarke, *supra,* 54 F.R.D. at 252; C. Wright, Law of Federal Courts 312 (2d ed. 1970).

■ To prevail under 42 U.S.C. § 1983 plaintiffs must show that defendants, acting under color of state law, have deprived them of a right secured by the Constitution and laws of the United States. Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). There is no question that defendants have been acting under color of state law. They are municipal officials and are responsible for the operation of a municipally owned utility. The dispute focuses on plaintiffs' rights under the Constitution.

Plaintiffs' due process contention rests upon a series of recent Supreme Court decisions which require notice and an opportunity for a hearing before certain administrative action can be taken. *See*

Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (hearing required before goods may be repossessed); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (hearing required before suspension of uninsured motorists' license); Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (hearing required before posting of notice forbidding sale of liquor to an individual); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (notice and hearing required before termination of welfare benefits); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (hearing required before garnishment of wages).

■ These decisions have developed a doctrine of entitlements to protect what has been variously described as "statutory entitlements" or "important interests" Bell v. Burson, *supra,* 402 U.S. at 539, 91 S.Ct. at 1589; Goldberg v. Kelly, *supra,* 397 U.S. at 262, 90 S.Ct. at 1017. This doctrine contemplates no distinction between "rights" and "privileges." Goldberg v. Kelly, *supra.* And it encompasses any significant interest in property even if disputed. Fuentes v. Shevin, *supra,* 92 S.Ct. at 1997.

■■ There can be little doubt that utility services "fall within the same constitutional protections afforded welfare benefits, wages, drivers' licenses, reputation in the community, and possession of personal property. . . ." Stanford v. Gas Service Co., 346 F. Supp. 717, 721 (D.Kan.1972); Bronson v. Consolidated Edison Co. of New York, Inc., 350 F.Supp. 443 (S.D.N.Y.1972). Termination of water service inflicts hardships on the consumer that transcend the deprivation of other protected interests. *Cf.* Palmer v. Columbia Gas Co., 342 F.Supp. 241, 244 (N.D.Ohio 1972). Moreover, in operating as an apparent monopoly the Water Department confers an important benefit on its customers sufficiently analogous to other

"entitlements" recognized in recent Supreme Court decisions. Davis v. Weir, 328 F.Supp. 317, 321 (N.D.Ga.1971). The "entitlement," however, is limited to those who are willing to assume financial responsibility for the service. Neither state law nor the Constitution recognizes a right to free water service. Morgan v. Kennedy, 331 F.Supp. 861 (D.Neb.1971).

■ In considering the relief to which plaintiffs may be entitled, the Court should assess existing remedies available to them. In Lucas v. Wisconsin Electric Power Co., 466 F.2d 638 (7th Cir. 1972) the Seventh Circuit held that the availability of informal and judicial remedies obviated the need for an administrative hearing before an impartial examiner. In addition to informal mechanisms for dispute resolution, the Court noted three legal remedies available to the customer: (1) the equitable remedy of injunction; (2) payment under protest and suit for refund; and (3) remedy at law for damages.

■ As the majority conceded, informal avenues for resolution of credit disputes do not operate as a legal remedy; they merely minimize the need for resort to a more formal procedure. *Id.,* at 648. In many instances there may be no need for consumers to participate in a pretermination hearing. Davis v. Weir, *supra,* 328 F.Supp. at 322. But where the need exists, "the right to an impartial judge—one who has no interest in the outcome of a case before him —is required to meet the minimum standards of due process." Lucas v. Wisconsin Electric Power Co., *supra,* 466 F.2d at 671, (Sprecher, J., dissenting).

■ The availability of an action in tort for actual damages is an inadequate substitute for a pretermination hearing as it comes after the harm is done. In Fuentes v. Shevin, the Court discussed the seizure of goods without notice or hearing, concluding:

"If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if it was unfairly or mistakenly taken in the first place. Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred." 92 S.Ct. at 1994–1995.

The viability of other judicial remedies as substitutes for an administrative hearing should be tested against Supreme Court pronouncements on the matter. The Court has never ruled directly on this question. Hopefully, it will do so in *Lucas* for which certiorari is pending. Typically it has avoided adjudicating the nature and form of an appropriate due process hearing. *See* Fuentes v. Shevin, *supra,* 92 S.Ct. at 2002; Bell v. Burson, *supra,* 402 U.S. at 542–543, 91 S.Ct. at 1591. It has said, however, that the hearing should be "appropriate to the nature of the case," Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) and dependent upon "the importance of the interests involved and the nature of any subsequent proceedings (if any)," Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). The Court gave some guidance in *Fuentes* when it stated:

"Leeway remains to develop a form of hearing that will minimize unnecessary cost and delay while preserving the fairness and effectiveness of the hearing in preventing seizures of goods where the party seeking the writ has little probability of succeeding on the merits of the dispute." 92 S.Ct. at 2002, n. 33.

In *Fuentes* the Court contemplated a hearing where the debtor could appear

without the assistance of counsel, if he so chose, to contest the "probable validity" of a claim against him. The hearing was to be preliminary to any judicial action. Moreover, the creditor, not the debtor, was to be the movant in any such action. He bore the burden of going forward and the burden of persuasion.

Conceivably the Court could have required that the creditor give sufficient notice of his intention to repossess so that the debtor might institute judicial action. Instead, it read the due process clause as requiring the creditor to sustain his burden of proof initially within a simplified administrative framework. This reading is consistent with a long held principle of procedure: "that the claimant, not the defendant, shall resort to a judicial process; that he who asserts something to be due him, not he who denies a debt, shall have the burden of judicial action and proof." Wood v. Auburn, 87 Me. 287, 293, 32 A. 906, 908 (1895).

Circuit courts faced with the question have required administrative hearings in a variety of situations. *See* Glover v. Housing Authority of City of Bessemer, 444 F.2d 158 (5th Cir. 1971); Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970). *See also* Brown v. Housing Authority of City of Milwaukee, 340 F.Supp. 114 (E. D.Wis.1972); Housing Authority of City of Milwaukee v. Mosby, 53 Wis.2d 275, 192 N.W.2d 913 (1972). *But see* Johnson v. Tamsberg, 430 F.2d 1125 (4th Cir. 1970). It has been reasoned that administrative hearings are often the only appropriate forums for assuring that people will have a meaningful opportunity to be heard. Their simplicity, informality and relative inexpense is such that anyone can participate in them. In short, they are flexible devices which are well suited for minor disputes.

Existing judicial remedies are inappropriate for the kind of speedy, initial determinations of liability needed here.

For the small customer the cost of proceeding at law or in equity is so out of proportion to the amount involved as to be prohibitive. The injunctive remedy, in particular, is burdensome and expensive. M.S.A. § 585.04 requires posting of a minimum $250.00 bond as a prerequisite to issuance of a temporary injunction. This is mandatory and jurisdictional. Bellows v. Ericson, 233 Minn. 320, 46 N.W.2d 654 (1951). Its application to those who are entitled to a hearing but are unable to meet the bond raises serious constitutional questions. *See* Boddie v. Connecticut, *supra.*

■ In addition, the legal requirements for injunctive relief are difficult to meet. These include: identification of a right to be protected; a showing of irreparable injury; a showing of an inadequate remedy at law; and a showing that there is a likelihood of prevailing on the merits. The absence of any one of these may block injunctive relief. Application of such standards to one who is entitled to a hearing as a matter of right, moreover, is illogical. As stated in *Fuentes*:

"The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. . . . It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods." 92 S. Ct. at 1997–1998.

The due process clause contemplates that before an agency of the state terminates an important benefit or statutory entitlement, *it* must provide notice and an opportunity to be heard. While the Supreme Court has failed to outline the kind of hearing required, it has directed that legislative bodies formulate procedures that are fundamentally fair. The present procedures under which defendants operate fail to meet that test, principally because of the lack of opportuni-

ty to be heard before termination of water service.

The cost to defendants in providing an impartial forum for resolution of credit disputes, while burdensome, is outweighed by the private and public interest in having such a forum. As with welfare benefits, " '[t]he stakes are simply too high for the (water) recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of (service) without giving the recipient a chance, if he so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal.' " Goldberg v. Kelly, *supra*, 397 U.S. at 266, 90 S.Ct. at 1019–1020. In undertaking to meet a recognized public need, defendants operate in a public, governmental capacity. The interests which counsel initial supply of water service, counsel as well its uninterrupted provision to those eligible to receive it.

What plaintiffs are entitled to here is a "regularized, orderly process of dispute settlement" prior to termination. Boddie v. Connecticut, *supra*, 401 U.S. at 375, 91 S.Ct. at 784. To insure plaintiffs' right to due process of law under the U.S. Supreme Court cases cited above, *Fuentes, Bell, Wisconsin, Goldberg* and *Sniadach*, defendants must establish a procedure whereby affected water users are notified and afforded an opportunity to be heard before an impartial hearing officer before water service is terminated. While the nature and form of this procedure is a subject for legislation, not adjudication, it should encompass the basic concepts set out in the cited Supreme Court decisions.

Plaintiffs also allege that the termination in this case violated their right to equal protection of the laws. The Court finds it unnecessary to rule on this question, as the named plaintiffs have left their premises. Others who are threatened with termination may now present their defenses before an impartial examiner.

The Court concludes that, as reconstituted, this is a proper class action; that the proposed intervenors are a part of this class, and their motion to intervene should be denied; and that plaintiffs are entitled to notice and an opportunity for an impartial hearing within the administrative framework prior to termination of water service. Defendants are enjoined from terminating water service without first affording affected users such an opportunity.

Let judgment be ordered accordingly. The title of the action may be amended to reflect the present occupants of the public offices named.

A stay of 30 days is allowed.