Geraldine STERLING et al.,
Plaintiffs-Appellants,

v.

VILLAGE OF MAYWOOD et al.,
Defendants-Appellees.

No. 77–1632.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1978.

Decided July 7, 1978.

Rehearing Denied Sept. 12, 1978.

Joseph Burden, Maywood, Ill., for plaintiffs-appellants.

Gordon V. Levine, Chicago, Ill., for defendants-appellees.

Before SPRECHER and WOOD, Circuit Judges, and REYNOLDS, Chief District Judge.[*]

SPRECHER, Circuit Judge.

This appeal raises the issue of what liability, if any, a municipality or its employees incur under 42 U.S.C. § 1983 or the Fourteenth Amendment when employees of the municipality's water department terminate a tenant's water service at the request of the landlord and subsequently decline to reinstate service after the tenant promises to pay for future service and offers a deposit to guarantee such payment.

I

Plaintiff is a mother of four minor children,[1] and resides in the Village of Maywood, Illinois (Village). Defendants are the Village, itself; Mark Kitch, its Manager; Edward Carter, and administrative assistant in charge of water service; and Leo Graham, an employee of the Village's Water Department.

Plaintiff's complaint [2] alleged in Count I [3] that she entered into an oral lease with Mr.

---

[*] Chief District Judge John W. Reynolds, of the Eastern District of Wisconsin, sitting by designation.

1. Mrs. Sterling's four minor children are also included as plaintiffs in this suit. However, since all of the plaintiffs' actions in response to the Village's termination were performed by Mrs. Sterling, we will henceforth use the expression "plaintiff" as a reference to her alone.

2. Since the district court dismissed plaintiff's complaint for failure to state a cause of action, we must accept as true its factual allegations. *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); *Hampton v. City of Chicago*, 484 F.2d 602, 606 (7th Cir. 1973), *cert. denied*, 415 U.S. 917, 94 S.Ct.

3. See note 3 on page 1352.

and Mrs. Melvin Ward to rent a single family dwelling located within the Village. Pursuant to her understanding of that lease, she moved into the building with her children on July 22, 1976. The landlords, on the next day, attempted to evict her, but were unsuccessful.

On August 5, 1976, the landlords called the Village's Water Department and requested that water service be terminated at the building where plaintiff was residing. The next day, August 6, a meter reader from the Village went to plaintiff's residence and suggested that she should go to the Village Hall and place the water service in her name. The following day plaintiff received a water bill at her residence addressed to "occupant" stating that $439.06 was due on August 25, 1976, for past water service. The bill also contained a note suggesting that the occupant place her name on the Village's records to avoid termination of service.

On August 9, the Water Department, without notice to plaintiff, terminated her water service. Plaintiff went to the Village Hall to find out why her service had been discontinued. In response to plaintiff's inquiry, defendants Carter and Graham explained that it was Village policy to terminate service upon the request of the person in whose name the bill is being paid. Plaintiff sought at that time to have her

water service reinstated and to that effect promised to pay for future water service and offered a deposit to guarantee payment. Defendants denied plaintiff's request for reinstatement for three reasons: because the landlords had not paid their bill, because plaintiff lacked a written lease and because the landlords had requested the termination. Plaintiff's water service was not reinstated for four days, and then it was provided only because the landlords agreed to pay $100 of the $439.06 they owed the Village Water Department.

Based on these facts, plaintiff sought a declaratory judgment and damages against the private defendants and the Village based on 42 U.S.C. § 1983[4] and the due process clause of the Fourteenth Amendment.[5] The district court reasoned that "[p]laintiffs have attempted to establish a federal claim out of what is essentially a landlord and tenant problem" and held, *sua sponte*, that the allegations "do not properly state a claim upon which relief can be granted under 42 U.S.C. § 1983, § 1985(3) or the Fourteenth Amendment . . . ." Plaintiff appeals from the district court's judgment.

## II

Plaintiff's first argument is that the defendants violated her due process rights when they terminated her water service

---

1413, 39 L.Ed.2d 471 (1974); *Ricci v. Chicago Merchantile Exchange*, 447 F.2d 713, 715 (7th Cir. 1971), *aff'd* 409 U.S. 289, 92 S.Ct. 1173, 31 L.Ed.2d 230 (1973). In addition, our factual inquiry is limited to those facts alleged in the complaint, and therefore, we cannot consider the various depositions included by both parties in the record on appeal. *Kirke v. Texas Co.*, 186 F.2d 643, 647 (7th Cir. 1951).

**3.** Count II of plaintiff's complaint was a claim under 42 U.S.C. § 1985(3) alleging a conspiracy between her landlords and the Village to deprive her of her rights. That claim also was dismissed by the district court. Plaintiff raises no issue as to her § 1985 claim. We, therefore, assume that she is not contesting the district court's judgment on that point.

**4.** That section provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

**5.** The district court's jurisdiction over the individual defendants was based on 28 U.S.C. § 1343(3) and jurisdiction over the Village was based on 28 U.S.C. § 1331.

without prior notice and an opportunity for some type of a "hearing."[6] Plaintiff reasons that, although a municipality is under no obligation to provide water service, once its chooses to do so "a *user* has a legitimate claim of entitlement to continue service absent sufficient cause for termination . . ." *Koger v. Guarino,* 412 F.Supp. 1375, 1386 (E.D.Pa.1976), *aff'd without opinion,* 549 F.2d 795 (3d Cir. 1977) (emphasis added).[7]

In evaluating the merits of plaintiff's contention, our concern must be with whether some basis exists for concluding that plaintiff's role as a tenant-water user creates a constitutionally protected property interest in continued water service. To resolve that issue, we must rely on the Supreme Court's analysis of "property" in *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), where the Court reasoned:

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

In applying that standard the Court instructed that property interests are not created by the Constitution, but rather they are "created" and "defined by existing rules or understandings that stem from an independent source such as state law." *Id. See also Arnett v. Kennedy,* 416 U.S. 134, 151·-52, 94 S.Ct. 1633, 1643, 40 L.Ed.2d 15 (1974) (plurality opinion); *Goss v. Lopez,* 419 U.S. 565, 574--75, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). The Court suggested two sources that create property interests: state statutes[8] and contracts—express or implied—between individuals and some agency of the state.[9] 408 U.S. at 577--78, 92 S.Ct. 2694.

**6.** To state a claim under 42 U.S.C. § 1983, plaintiff must demonstrate both that there has been state action and that that action has deprived plaintiff of a constitutional right. *Adickes v. Kress & Co.,* 398 U.S. 144, 169, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). There is no dispute here that the action of the Village's Water Department constituted state action. The only issue is whether plaintiff has been deprived of any constitutional rights.

**7.** Plaintiff cites several cases for the proposition that utility users possess a constitutionally protected property interest in continued service. However, almost all of those cases deal with the right of the utility "customer"—the person paying the utility bill directly to the utility—as opposed to the rights of the utility user. *See Craft v. Memphis Light, Gas & Water Div.,* 534 F.2d 684, 687 (6th Cir. 1976), *aff'd,* 429 U.S. 1090, 97 S.Ct. 1098, 51 L.Ed.2d 535 (1978); *Palmer v. Columbia Gas of Ohio, Inc.,* 479 F.2d 153, 156 (6th Cir. 1973); *Condosta v. Vermont Elec. Corp., Inc.,* 400 F.Supp. 358, 365 (D.Vt.1975); *Donnelly v. City of Eureka,* 399 F.Supp. 64, 67 (D.Kan.1975); *Limuel v. Southern Union Gas Co.,* 378 F.Supp. 964, 965 (W.D.Tex.1974); *Bronson v. Consol. Edison Co. of N. Y.,* 350 F.Supp. 443, 447 (S.D.N.Y.1972); *Hattell v. Public Service Co. of Colorado,* 350 F.Supp. 240 (D.Colo.1972); *Stanford v. Gas Service Co.,* 346 F.Supp. 717, 719 (D.Kan.1972). *But see Davis v. Weir,* 328 F.Supp. 317 (N.D. Ga.1971), *aff'd,* 497 F.2d 139 (5th Cir. 1974);

*Koger v. Guarino,* 412 F.Supp. 1375, 1386 (E.D. Pa.1976), *aff'd,* 549 F.2d 795 (3d Cir. 1977); *Lamb v. Hamblin,* 57 F.R.D. 58 (D.Minn.1972). Our decision that plaintiff, as a tenant water user, does not have a due process right to water service in this case in no way conflicts with the analysis in those cases.

During the pendency of this appeal, the Supreme Court decided *Memphis Light, Gas & Water Division v. Craft,* ----- U.S. ----, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). In that case, the Court held that a customer of a municipal water company has a protectible property interest in continued service, and thus some procedures for resolving billing disputes must be provided by the utility. The *Craft* opinion, however, does nothing to aid plaintiff's claim in this case because she is not a customer of the Village of Maywood's Water Department. As is made clear in the text of this opinion, since plaintiff has no contractual relation with the Village, and no statute provides her with an entitlement, she has no basis upon which to claim that there has been a deprivation of any property within the meaning of the Fourteenth Amendment.

**8.** *See Goldberg v. Kelly,* 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (State Welfare Code).

**9.** *See Perry v. Sindermann,* 408 U.S. 593, 600, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (express contract or de facto tenure policy sufficient to create property interest).

In our view, plaintiff has no contractual or statutory basis for any legitimate claim of entitlement to continued water service. First, plaintiff had no contractual relationship with the Village Water Department. The landlords of her building were the applicants for water service and they were the persons who sought termination of that service. Thus, the express contractual interest in water service was theirs exclusively. In addition, plaintiff makes no claim that a de facto understanding existed between her and the Village. Thus, there is no implied property right. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Second, plaintiff can point to no provision in the state's laws or in the municipal ordinances that purports to provide her with a legitimate claim of entitlement to water service. In fact, the Village's municipal ordinance precludes such a claim. In its preamble, the ordinance does not purport to provide service to all people; instead, it recognizes that "it is necessary that the Village charge the inhabitants thereof for the use thereof and the services supplied." Ord.No. 68 § 32. To effectuate this limited provision of service, the ordinance specifies that "[a]ny householder, property owner or other person desiring water or sewer service . . . shall make application therefor . . . ." *Id.* at § 32.1. Thus, the applicable state law only provides a claim of entitlement to those who have made an application for water service. Since plaintiff has neither a contractual nor a statutory basis to support her claim, we conclude that plaintiff was not deprived of

a due process right by defendants' termination of her water service.[10]

Plaintiff correctly points out that other courts have held in other contexts that a water user has a constitutionally protected interest in continued service. However, no court of appeals has discussed this entitlement issue. In *Davis v. Weir,* 497 F.2d 139 (5th Cir. 1974), the municipality conceded on appeal that it had a duty to provide the actual user with notice prior to termination.[11] Thus, the Fifth Circuit did not have to consider whether a property interest existed. 497 F.2d at 143. In *Koger v. Guarino, supra,* the Third Circuit affirmed the district court's determination that there was an entitlement, but did so without an opinion.

Three district courts have held that a water user has a legitimate entitlement to continued water service when that service is terminated due to arrearages in the landlord's bill. *See Davis v. Weir,* 328 F.Supp. 317 (N.D.Ga.1971); *Koger v. Guarino,* 412 F.Supp. 1375 (E.D.Pa.1976) and *Lamb v. Hamblin,* 57 F.R.D. 58 (D.Minn.1972). With all due respect to those courts, we find their reasoning unpersuasive as applied in this case. In *Koger,* the court merely stated that an interest existed without explaining the basis for entitlement. 412 F.Supp. at 1386. In both of the other decisions, the courts attached dispositive significance to the importance of water as "an absolute necessity of life." 328 F.Supp. at 321; 57 F.R.D. at 61. That analysis, however, is irrelevant to the question of whether there is an entitlement. As the Supreme Court

10. We are not unmindful of the inconvenience that our decision will cause individuals such as plaintiff who in the future will have their water service disrupted without notice. However, in light of our discussion in part III of this opinion, it is reasonable to assume that that disruption will be for only a short period of time. In addition, we should note that our decision has the incidental effect of saving municipal utilities the potentially onerous burden of investigating and providing some form of notice and

opportunity for a hearing in regard to every request for termination of service.

11. The reason why the municipality conceded this point is not made clear by the court's opinion. However, the city ordinance at issue there expressly provided for "three days' notice to the owner or tenant before cutting off the water supply for nonpayment of bills." 497 F.2d 139, 141 n. 2. Thus, the municipality may have failed to comply with its own ordinance.

has made clear, it is the nature, and not the weight or importance, of the plaintiff's interest that determines whether a property interest exists.[12] *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 270, 33 L.Ed.2d 548 (1972); *Goss v. Lopez,* 419 U.S. 565, 575–76, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Nothing in any of the decisions cited by plaintiff or in anything plaintiff has argued persuades us that she, as merely a water user, had a legitimate claim of entitlement to continued water service once the landlord requested termination of that service.

## III

Plaintiff's second argument is that the defendants violated her constitutional rights when they refused to reinstate her water service. Three reasons are listed in plaintiff's complaint for the defendants' refusal to reinstate her water service: (1) the landlord failed to pay his water bill for service at her residence; (2) the landlord requested the termination; and (3) the plaintiff failed to produce a written lease. We believe that plaintiff's allegations are sufficient to state a violation of both her equal protection and her due process rights, and we, therefore, reverse the judgment of the district court on this issue.

With regard to the equal protection argument, two circuit courts have held that a refusal to reinstate water service because the landlord has failed to pay the water bill is a violation of the tenant's right to equal protection. *Davis v. Weir,* 497 F.2d 139 (5th Cir. 1974); *Craft v. Memphis Light, Gas & Water Division,* 534 F.2d 684 (6th Cir. 1976), *aff'd,* 429 U.S. 1090, 97 S.Ct. 1098, 51 L.Ed.2d 535 (1978). ...e basis for those holdings is that the municipality is classifying applicants for service into two categories: "applicants whose contemplated service address is encumbered with a pre-existing debt (for which they are not liable) and applicants whose residence lacks the stigma of such charges." 497 F.2d at 144; 534 F.2d at 690. Since that classification is not "suspect" and does not affect any fundamental interests, the issue becomes whether the classification is rationally related to the legitimate governmental purpose of collecting unpaid water bills. We agree with the courts in *Craft* and *Weir* that a collection scheme

> that divorces itself entirely from the reality of legal accountability for the debt involved, is devoid of logical relation to the collection of unpaid water bills from the defaulting debtor.

497 F.2d at 144-45; 534 F.2d at 690. Since plaintiff has alleged that the unpaid water bill was one reason why the defendants refused to reinstate her service,[13] we must reverse the district court's dismissal of her complaint and remand the case to give plaintiff an opportunity to prove her allegation.

With regard to the due process claim, plaintiff alleged that the defendants required her to produce a written lease before they would reinstate her service. As we stated earlier in this opinion, plaintiff's entitlement to water service is statutorily defined. The Village ordinance dealing with provision of water service states clearly that "[a]ny . . . person desiring

---

12. We should make clear that although we have found the analysis on entitlement presented in the three district court opinions to be unpersuasive, we in no way mean to suggest that those cases were wrongly decided on the merits. The issue of what rights a tenant has when the municipality terminates water because the landlord has failed to pay the water bill is not before us. Plaintiff does not allege that the Village *terminated* her water service because of the landlord's failure to pay for past water service.

13. Since defendants reinstated plaintiff's water service after the landlord promised to pay a portion of the unpaid water bill, it is reasonable to assume that the bill was a factor of special significance in the defendants' decision not to reinstate service.

water service from the Department of Public Works . . . shall make application" and if the applicant "has complied with all the provisions of the ordinances of the Village, and has paid all fees a permit *shall* then be issued . . . ." Ord.No. 68–13, § 32.1 (emphasis added).

According to section 32.1, plaintiff was entitled to water service if she paid her fees and complied with the ordinance's other requirements. Plaintiff alleged that she offered to pay a deposit fee and promised to pay for all future service, which would seem to satisfy the fee requirements. Based on our reading of the Village Ordinance, the only other requirement is that plaintiff provide a completed application for service. Although we cannot determine on the pleadings whether a complete application for water service at plaintiff's residence was on file at the Village Water Department, it is likely that the application for the previous service would have satisfied the Village's requirement. Thus, based on the Village's ordinance, we can see no reason why plaintiff was denied water service.

■ The only explanation offered by defendants for their refusal to supply water was that plaintiff lacked · a written lease. Initially, we should note that nothing in the statute requires that a written lease be provided in order to receive water service. However, even if the Village has some regulation regarding leases—which defendants have not shown—given the statute's command that "any person" can receive service, the Village at a minimum should have provided plaintiff with an opportunity to prove she had a leasehold interest in her residence. Therefore, based on the Village's

ordinance and the pleadings, we conclude that defendants very well may have deprived plaintiff of a constitutionally protected entitlement to water service when they rejected summarily her efforts to reinstate her water service. She must be given an opportunity to prove her allegations.

We reverse the district court's dismissal of plaintiff's complaint on the issue of reinstatement and remand the case for further proceedings consistent with this opinion.

## IV

■ Since we have determined that the district court erred in dismissing completely the plaintiff's complaint, we must consider whether the plaintiff can continue her action for damages against the defendant Village.[14] The issue as originally argued by plaintiff in her briefs was whether the Fourteenth Amendment provided an implied remedy for the constitutional torts she had alleged. *See generally* Hundt, *Suing Municipalities Directly under the Fourteenth Amendment,* 70 Nw.U.L.Rev. 770 (1975); Note, *Damage Remedies Against Municipalities for Constitutional Violations,* 89 Harv.L.Rev. 922 (1976). Plaintiff relied upon the Fourteenth Amendment because she recognized that the Supreme Court's decision in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), precluded her from suing the Village under 42 U.S.C. § 1983. During the pendency of this appeal, however, the Supreme Court overruled its prior holding in *Monroe,* and held that municipalities are no longer immune from suits under that statutory provision. *Monell v. Dep't of Social Services,* - - - U.S. - - - -, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[15] We therefore must now consider the availa-

---

14. Given our disposition in part III of this opinion, that a constitutional violation has been alleged, we assume that plaintiff's sole remaining concern is with whether the municipality can be made liable for damages under the Fourteenth Amendment. (*See* appellant's brief at 13 14).

15. The Court in *Monell* did not discuss explicitly whether the decision should be applied retroactively. The Court did state however, that "municipalities can assert no reliance claim" to absolute immunity. 98 S.Ct. at 2040. That comment would seem to suggest that there would be no prejudice created by applying the

bility to plaintiff of monetary relief against the Village under section 1983.

According to plaintiff's complaint, ordinary employees of the Village Water Department were responsible for the decision not to reinstate her service. Plaintiff does not allege that the decision refusing to reinstate her service was made in accordance with any official policy of the Village or the Water Department. In addition, there is no allegation that there was any "custom" or "practice" within the Department with regard to when or under what conditions terminated service should be reinstated. Absent such allegations, it is clear that under the Court's decision in *Monell, supra*, plaintiff cannot recover under section 1983.

The Court explicitly defined the limits of its decision as follows:

> [T]he language of § 1983 read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort.

*Monell, supra* at 2036. Thus, the Court expressly rejected the idea that a municipality could be liable under section 1983 solely on a theory of *respondeat superior*. While that language was dicta since the suit involved there challenged a municipality's official policy, see *id.* at 2047 (Stevens, J., concurring), we nonetheless are obliged to follow it until the Court should decide to the contrary. Since under plaintiff's allegations she could recover only under a theory of *respondeat superior,* we hold that she has failed to state a cause of action for damages against the Village under 42 U.S.C. § 1983.[16]

For the reasons stated above, we affirm, the district court's dismissal of the defendant Village and its dismissal of that portion of Count I of plaintiff's complaint dealing with the termination of her water service, but we reverse the district court's dismissal of that portion of Count I dealing with the individual defendants' refusal to reinstate plaintiff's water service and remand to the district court for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART.**

HARLINGTON WOOD, Jr., Circuit Judge, concurring in part and dissenting in part.

This case arises from the fact that plaintiff was without water service for four days in a residence she was occupying under doubtful circumstances. It is seen from her complaint that she claimed to have a temporary oral lease, but this was disputed by the unwilling "landlord" who endeavored, with the assistance of two policemen, to eject her as soon as she occupied his premises. Plaintiff, however, held steadfast for several weeks. The landlord then notified the water department to terminate the existing water service to his premises. Since he was in arrears on his water bill, not surprisingly the water department complied with his request within a few days. The plaintiff in the meantime was the beneficiary of the water service for about three weeks without having made her own arrangement or having assumed any obligation to pay for it. Plaintiff was advised by a meter reader, making his final reading on a Friday prior to terminating the water at the owner's request, to contact the water department to

ruling to suits pending at the time of the decision. We therefore have decided to apply *Monell* to this case.

**16.** Our conclusion that plaintiff cannot recover damages against the Village applies with equal force if we view the claim as being based on the Fourteenth Amendment. This court previously has rejected the theory of *respondeat superior* in suits for damages against municipalities based on the Fourteenth Amendment. *McDonald v. State of Illinois,* 557 F.2d 596, 605 (7th Cir. 1977). Thus, plaintiff's suit against the municipality is essentially unaffected by the Supreme Court's decision in *Monell.*

make her own arrangements. The next day, Saturday, a written notice to come to the water department was received at the premises. Plaintiff did nothing until after the water service was terminated on the following Monday. Then, however, she quickly responded, demanded immediate restoration of her service, and when the water department failed to comply within one day, filed this suit. The water department found itself faced with a property owner, himself in arrears, demanding the water be turned off, and plaintiff, a stranger to the water department and in a dispute with the owner, demanding it be turned on. It does not seem constitutionally impermissible for the water department, considering that plaintiff was not its only customer, to take a short time to try to solve the problem before resuming service to the premises. The plaintiff, in view of her own tardy contact with the water department, could not reasonably expect instant water service under those circumstances. Had plaintiff undertaken to resolve her own landlord-tenant problem before the shutoff of service, the water department would not now find itself undeservedly caught in the middle. In my judgment it appears from the complaint that the plaintiff was responsible for her own brief problem and does not deserve under any theory to benefit financially at the expense of the village and its officials.[1] After plaintiff got herself in this fix, what she needed was a little patience, not a federal lawsuit.

The facts of this particular case do not rise to the level of a constitutional question. I respectfully dissent from Part III of the majority opinion and would affirm the dismissal of the complaint.

---

1.  It is not a fact to be considered at this stage of the proceedings, but it appears in the record (not in the complaint) that plaintiff's time without water would have been even shorter had the water department been able to locate her to advise her that the water was being turned on so that there would be no accidental flooding.