845 F.2d 566
 Ann COGHLAN, Plaintiff-Appellant,
v.
Donald STARKEY, Emmett Perrilloux, Anthony S. Arnone,
Stanley Howes, Joseph W. Potasnick and Waterworks
District No. 2 of Tangipahoa Parish,
Louisiana, Defendants-Appellees.
 No. 87-3668.
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 May 23, 1988.
 Ralph Brewer, Baton Rouge, La., for plaintiff-appellant.
 Robert W. Tillery, Ponchatoula, La., for defendants-appellees.
 Appeal from the United States District Court For the Eastern District of Louisiana.
 Before GEE, RUBIN and SMITH, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellant Ann Coghlan brought suit in the court below under 42 U.S.C. Sec. 1983 against the local Waterworks District and its Board of Commissioners, asserting violation of her constitutional rights in that the defendants refused to perpetuate the free water service she had enjoyed for several years. The District Court, on the basis of a Magistrate's hearing and recommendation, denied all relief. We affirm.
 
 I.
 
 2
 Appellant Ann Coghlan moved into her home in 1978, at which time she had water service that she assumed was included in her monthly rental. Neither she nor her landlord received any bill from Waterworks District No. 2 until a $206.22 late notice was received in February 1985. The District was created in 1981, with Farmers' Home Administration (FHA) financing, to succeed the prior water provider.
 
 
 3
 The District evidently became aware of her water usage and put Coghlan's name and address on computer logs in early 1984. The October 1984 printout shows her billed at the higher non-residential rate of $20.00, so the $206.22 billed in February 1985 probably represents ten months at the commercial rate, plus interest.[1] The parties dispute whether bills were sent between early 1984 and February 1985.
 
 
 4
 Upon receipt of the February 22, 1985, bill and late notice, Coghlan contacted the Waterworks District and the police jury and other officials. On March 19, her water was shut off by a service agent who personally delivered a copy of the $206.22 bill and/or the cut-off order. She had received no prior notice of the impending discontinuance other than the threat in the late notice, though District employees testified that notices had to have been sent according to procedure.
 
 
 5
 The President of the Waterworks District Board of Commissioners had service restored the next day (March 20) when Coghlan contacted him. The District's attorney contacted Coghlan by phone and letter in early April, identifying himself; explaining that the District could provide no further free water service and that the FHA required all users to make formal application for service; urging her to contact her landlord; and informing her that she could have ten days to solve the dual problems of the past-due amounts and the rate for future service. She evidently took no steps to apply formally for water service or otherwise to resolve the situation. Coghlan received other notices demanding payment by May 25, 1985. This date came and went without action by either party.
 
 
 6
 On May 28, 1985, Coghlan received a notice that she would be charged an increased residential flat rate of $12.00 per month. She later received a bill dated June 5, 1985, that informed her that payment must be made by June 26, 1985, or service would be terminated. Only at this point did Coghlan act: On June 25, 1985, she paid $8.00 at the District's office but did not return the completed service application form she had been given after the first cut-off.
 
 
 7
 The following day, her water was for the second time turned off. The tape recording of the Board meeting makes clear that it was not her underpayment of the current bill, nor the continuing past-due problem, that forced the Board to interrupt service again, but rather the fact that she refused to "come to terms with the Water District as she was told." Coghlan has enjoyed legal counsel at all times since this second service termination.
 
 
 8
 Coghlan's attorney met with Commissioners of the Waterworks District several times, with and without Coghlan present. At one of these meetings, one of the Commissioners proposed that if the metering charge was too high, the District, subject to FHA approval, could allow her to pay it in installments tied to her monthly water usage. Coghlan was not satisfied with even this concession.
 
 
 9
 At the August Board meeting, her attorney was presented, for Coghlan's signature, with an agreement incorporating all of the District's prior concessions, except an explicit release of the past-due amount.[2] The attorney for the Waterworks District, who had prepared the agreement and declined to waive all past-due amounts in the written settlement, testified that this agreement was "going further with this particular lady than the District did with its regular customers." Walker deposition, p. 14. A tape recording of the Board meeting shows, as the Magistrate found, that the District's Commissioners did in fact agree to waive all amounts from 1981 through February 1985.
 
 
 10
 Though given until August 20, 1985, to sign the settlement, Coghlan refused her consent because, she says, the "board would not waive the debt or give her a copy of rules and regulations regarding termination of water service." Brief for Appellee, page 16. The Magistrate found that even after the second shut-off, Coghlan "maintained that she was not responsible for payment": Since she rented the house with the water on, not only was the backbill the landlord's responsibility, but she felt that any obligation of maintaining the water was strictly that of the District and her landlord. Her water service remains disconnected.
 
 II.
 
 11
 This Court has ruled that there is no support "for the proposition that there is a constitutional right to receive [utilities] when the applicant refuses to comply with reasonable administrative procedures." Burgess v. City of Houston, 718 F.2d 151, 154 (5th Cir.1983). See Horizon Concepts, Inc. v. City of Balch Springs, 789 F.2d 1165, 1168 (5th Cir.1986). Having carefully examined the termination policies of the District, the Magistrate below found that Coghlan did not apply for water service and, therefore, did not have a property interest in such service. The Magistrate went further and assumed that even if Coghlan had possessed a protected property interest in the service, she had in no way been denied due process.
 
 
 12
 The record and the admissions of the Plaintiff support the finding that the Plaintiff received notice prior to both cut-offs and was provided "ample opportunity to resolve the matter" under the standards of Memphis Light, Gas & Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), the only case cited by Coghlan's attorney as supportive of her position herein. See also Davis v. Weir, 497 F.2d 139, 144 n. 7 (5th Cir.1974). While due process may in certain circumstances require even more formal and elaborate notice and hearing than the adequate disconnection procedures here, the concessions and the good-will gestures on the part of the Board of Commissioners demonstrate complete good faith and an ample accommodation of Coghlan's particular difficulties.
 
 
 13
 However, the failure to demonstrate a deprivation of a constitutionally-protected interest obviates the need to determine whether a section 1983 plaintiff was afforded due process of law. Marrero v. City of Hialeah, 625 F.2d 499, 502, 519 (5th Cir.1980). The existing jurisprudence is abundantly clear that Coghlan enjoyed no entitlement to water service.
 
 
 14
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it ... [,] more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.
 
 
 15
 Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).
 
 
 16
 Such a protected property interest is "defined" and created by "existing rules or understandings that stem from an independent source." Sterling v. Village of Maywood, 579 F.2d 1350, 1353 (7th Cir.1978), cert. denied, 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979). The two sources thus far recognized as establishing such an interest are (i) state statutes and (ii) legal contracts between a state agency and the individual. Roth, 408 U.S. at 577, 92 S.Ct. at 2709.
 
 
 17
 As for the first possible source (i.e., state statutes), the Waterworks District notes that the legislation enabling termination of water service is not limited to termination only "for cause." La.R.S. 33:3818, 33:3820. Under Louisiana law, it is also not unreasonable for a water district to refuse to supply water to persons who fail or refuse to pay for water consumed by them as renters. LaNasa v. Sewerage & Water Board of New Orleans, 184 So.2d 622 (La.App. 4th Cir.1966), writ ref'd, 249 La. 197, 186 So.2d 158 (1966); Gaither v. Arkansas Louisiana Gas Co., 475 So.2d 71 (La.App. 2d Cir.1985); see Sterling v. Village of Maywood and Burgess v. City of Houston.
 
 
 18
 The Plaintiff references no alternate statutory provision establishing a general right to water service; and the Magistrate even inquired into regulatory and policy statements that might theoretically establish a property interest.[3] He could not find even in the charter that created the District a suggestion that water service was a right of the citizens of Tangipahoa Parish.
 
 
 19
 Coghlan rests her claim primarily upon the other possible source of a property right to continued service (i.e., the alleged existence of a contract), but there was no contract between her and the Waterworks District, express or implied. Indeed, it was her adamant refusal even to apply for service that placed her in the identical position of the tenant in Sterling v. Village of Maywood. The Magistrate found that neither the mere receipt of water and carrying of Coghlan on the District's rolls as a user, nor her single partial payment, created such a contractual relationship.
 
 
 20
 The negotiations over the backbill and the billing errors alone could not have established the type of interest required to raise the disconnection of service to a deprivation of a valuable property right. The indulgent treatment the District accorded Coghlan for four months before termination, and the further concessions in August, do not establish some de facto understanding that the District would continue to deal with her indefinitely, absent her compliance with their reasonable requirements for maintaining service. Sterling v. Village of Maywood, 579 F.2d at 1353.
 
 
 21
 Coghlan's perhaps subjective expectation that further deadlines would pass without repercussions could not create a contractual relationship; mere receipt of the water for several years could not unilaterally create a legitimate claim of entitlement. And even had she made formal application for water service and been hooked up to a meter, this contractual relationship would not have prevented a shut-off for failure to pay for the water she used. LaNasa v. Sewerage & Water Board of New Orleans; Gaither v. Arkansas Louisiana Gas Co.; Burgess v. City of Houston.
 
 III.
 
 22
 Because of the totally unfounded nature of the constitutional claim here advanced, the District Court was entirely justified in imposing costs upon the plaintiff. The law was and is well settled, and there was no substantial issue as to the adequacy of pretermination notice, so disregarding the Magistrate's decision that each party should bear its own costs was not an abuse of the District Court's discretion.
 
 IV.
 
 23
 It appears to us that the magistrate's decision dispelled any claim that there was a colorable constitutional deprivation. Though novel constitutional theories should not be chilled, costs and attorneys' fees are merited for a frivolous appeal the result of which is obvious from the comprehensive and decisive exposition of the law by the judge below. George v. Texas, 788 F.2d 1099 (5th Cir.), cert. denied, *--- U.S.----, 107 S.Ct. 226, 93 L.Ed.2d 153 (1986); Stelly v. Commissioner, 761 F.2d 1113 (5th Cir.), cert.denied, 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985); Martinez v. I.R.S., 744 F.2d 71 (10th Cir.1984).
 
 
 24
 While the appellee did not move for sanctions on appeal (or, for that matter, in the district court), we do not lack authority to impose sanctions for a frivolous appeal sua sponte if appropriate.
 
 
 25
 At least two categories of sanctions are available: costs and attorney's fees. The applicable provision on appeal, Fed.R.App.P. 38, provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."
 
 
 26
 In the absence of a motion for sanctions, however, the appellant has not had the opportunity to show cause why sanctions should not be imposed and, if imposed, the nature or amount of the sanction and whether, if imposed, the burden should be borne by the appellant, appellant's counsel, or both. We wish therefore to provide that opportunity. No later than the fourteenth day following the date of this opinion, appellant's counsel may file with the clerk a memorandum, not to exceed ten pages, setting forth his position on the assessment of sanctions for this appeal, the propriety of such sanctions, and who (appellant and/or her attorney) should bear those sanctions. Appellee shall file a similar memorandum on or before the same date and shall also file an affidavit setting forth the time and expense (in the form of nontaxable costs) incurred in responding to this appeal in accordance with Local Rule 47.8 so that the court will have this information should it decide to impose sanctions.
 
 
 27
 The judgment of the district court is AFFIRMED, but the mandate is STAYED pending determination of the question of costs and attorney's fees.
 
 
 
 [1]
 At the time, the residential rate was $8.00 per month and the commercial, $20.00. In May 1985 the residential rate was increased to $12.00 for unmetered customers and $8.00 to $10.00 for metered. It would cost $112.50 for hookup to a meter. Coghlan's one $8.00 payment in June 1985 was thus $4.00 short. While it is true that the February 22, 1985, bill mistakenly listed her as a non-residential customer, the Waterworks District readily offered to treat her as a residential customer, and to make according adjustments, long before litigation was undertaken, and so this non-issue is irrelevant to Coghlan's claim
 
 
 [2]
 The agreement said:
 I, ____, agree to pay, Waterworks District # 2 of Tangipahoa Parish the sum of $12.00 per month to apply as follows: Any amount of this $12.00 each month that is over the normal water bill would be applied to Mrs. Coghlan's Deposit and Service Fee which is $112.50. Of this $112.50, $50.00 is Refundable only. It is for a $50.00 hook-up charge, a $50.00 meter-service Deposit, and a $12.50 billing service charge, which totals $112.50.
 When the time comes that the deposit-service fee is completely paid, she will pay her normal water bill for each month.
 This agreement can only be finalized after an application for service is completed in the Water Dist. # 2 of Tangipahoa Parish office and signed by [Coghlan and various Commissioners.]
 The purport of the last line and of the District's insistence that the metering charges could not be waived requires brief comment. The Farmers' Home Administration requires all regulated operators to recover these costs of hook-up without exemption or exception. The reasonableness of the requirement of formal application is apparent in the need for correct billing information. The justification for absolute recovery of metering costs, obviously designed to assist the financial integrity of rural water boards, was not specifically challenged by the Plaintiff, but her constitutional claim implicates the statutory and regulatory underpinnings of the District's conduct. Therefore, the court notes that while an exemption or partial waiver for indigent applicants would not be unreasonable, the omission of such a provision does not condemn the FHA regulations. Burgess v. City of Houston, 718 F.2d 151, 154 (5th Cir.1983) (conditioning utility service on performance of certain, even costly, actions does not raise the financial hardship to a constitutional injury); Davis v. Weir, 328 F.Supp. 317 (N.D.Ga.1971); Davis v. Weir, 497 F.2d 139, 144 n. 7 (5th Cir.1974).
 
 
 [3]
 While policy statements, ordinances, regulations, or decisions officially adopted and promulgated by an agency can provide the color of state law required for a Sec. 1983 claim, Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978), Roth requires something more for the establishment of a property interest in some alleged entitlement. 408 U.S. at 577, 92 S.Ct. at 2709. A clear example is the State Welfare Code in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). See Sterling v. Village of Maywood, 579 F.2d at 1353 n. 8. We therefore think examination of the Waterworks District's charter and other sub-statutory sources in a search for such an entitlement was unnecessary and indeed improper
 Without more, such as a contract, they could not create an entitlement.