**Francisca MARRERO GARCIA,
et al., Plaintiffs,**

v.

**Maria Margarita IRIZARRY,
et al., Defendants.**

Civ. No. 92–1526 (JP).

United States District Court,
D. Puerto Rico.

Aug. 17, 1993.

**524**

Ariel O. Caro Pérez, Law Offices of Alvaro R. Calderón, Jr., San Juan, PR, Jesús M. Hernández Sánchez, Santurce, PR, for plaintiffs.

Mirta E. Rodríguez Mora, Dept. of Justice, Federal Litigation Div., San Juan, PR, Enrique J. Mendoza Méndez, Santurce, PR, Manuel E. Izquierdo, Trías, Acevedo & Otero, San Juan, PR, Dolores Barceló Ramírez, Cobián Plaza, Santurce, PR, for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it defendants' Motion for Summary Judgment dated January 15, 1993 (docket No. 29). For the reasons set forth below, the motion is hereby **GRANTED.**

### I. Background [1]

The plaintiffs, who are 347 residents of Condominium Bahía–A located at Calle Las Palmas in Santurce, Puerto Rico, bring this action pursuant to 42 U.S.C. § 1983 seeking injunctive relief and damages for alleged violations of their rights under the due process clause of the Fourteenth Amendment to the United States Constitution. The jurisdiction of the Court is predicated on 28 U.S.C. § 1343.

Condominium Bahía–A (hereinafter "the Condominium") is a 234–unit housing project which was originally owned and developed by the Corporación de Renovación Urbana y Vivienda ("CRUV"), a now-defunct public housing agency of the Puerto Rico government. On November 11, 1972, CRUV opened an account with the Puerto Rico Aqueduct and Sewer Authority ("PRASA") for water and sewer services for the Condominium.[2] The PRASA account served all of the units of the Condominium through a single meter. PRASA thereafter billed and collected from CRUV for water and sewer services provided to the Condominium.

---

**1.** The material facts for purposes of defendants' motion are not in dispute. The facts set forth in this Opinion & Order are drawn primarily from a set of facts stipulated by the parties during an Initial Scheduling Conference held on October 22, 1993. *See* ISC Order (Docket No. 28). Additional facts are drawn from the statements of undisputed facts filed by the parties along with their motions in support and in opposition to defendants' motion for summary judgment.

**2.** PRASA is the sole provider of water services within Puerto Rico. It is a public corporation created by virtue of Law No. 33, of June 27, 1985, 27 L.P.R.A. § 262 *et seq.*

In early 1973, ownership of the Condominium was passed to its residents. A Council of Owners of Condominium Bahía–A ("the Council") was constituted to, among other things, "administer all phases and aspects" of the Condominium, including "contract[ing] all necessary services." On February 14, 1973, the Council and the Board of Directors of the Condominium notified Banco de Vivienda, the mortgagor of the property, that they had taken over the administration of the Condominium.

The plaintiffs have alleged that when they purchased their properties from CRUV they were told, as an incentive, that CRUV would continue to pay for all water and sewer services. CRUV in fact continued to be billed and to pay for these services until October 1, 1981, at which time CRUV requested to PRASA that it cancel the account for the Condominium.

For almost four years after the CRUV account for the Condominium was cancelled, PRASA made no effort to collect from the Condominium's residents for water and sewer services provided. No explanation has been provided for this situation. On July 12, 1985, PRASA requested in writing that the Condominium, through its Board of Directors, place a bond with PRASA to register an account in its name. PRASA warned that the failure to register an account could lead to suspension of water services. *See* Ex. 6 of Defendants' ISC Memo. On July 22, 1985, the Council answered PRASA's request by refusing to pay for any water and sewer services unless individual meters were installed for each of the apartments. The Council also recommended that PRASA arrange a meeting with CRUV to discuss the problem. *See* Ex. 7 of Defendants' ISC Memo. On September 6, 1985, PRASA notified the Board of Directors that it had scheduled a meeting with CRUV officials for September 24, 1985. The Board refused to attend the meeting, due to alleged internal problems. *See* Exs. 8 and 9 of Defendants' ISC Memo.

On May 30, 1986, PRASA officials again sent a letter to the Board of Directors requesting the placement of a bond to register an account on behalf of the Condominium.

As in the first letter, PRASA warned that failure to comply with this requirement could lead to the suspension of water services. In a letter dated June 3, 1986, the Board of Directors again refused to comply with PRASA's request, claiming that CRUV was responsible for the payment of water and sewer services. *See* Exs. 10 and 11 of Defendants' ISC Memo.

In July 1987 PRASA officials met with Teodoro González, the President of the Board of Directors, to discuss the Condominium's duty to register an account with PRASA. González requested an extension of time to schedule a meeting with CRUV officials. PRASA allowed the Board of Directors until August 10, 1987, to register the account, place a bond, and reach agreements for the payment of the outstanding debt. *See* Exhibit 12 to Defendants' ISC Memo. None of these requirements were ever fulfilled. On November 30, 1989, another meeting was held with Gladys López, the new President of the Board of Directors, Félix Ramos del Valle, the Administrator of the Condominium, and defendant Pedro Juan Soto, the San Juan Regional Administrator of PRASA. Soto again requested that the Condominium register an account with PRASA. The Condominium representatives again insisted that CRUV was responsible for the services rendered and again suggested a meeting with CRUV officials.

On December 21, 1989, a meeting was held with CRUV officials. CRUV denied any responsibility regarding the water and sewer services rendered to Condominium after its closing of the account. The parties nonetheless agreed to hold a meeting with all the Condominium's residents. At this meeting, which was held on December 27, 1989, PRASA officials again requested that the Condominium register an account and place the required bond for the water and sewer services. PRASA proposed a plan whereby the pending debt could be paid in installments. The residents rejected PRASA's proposals and again insisted on the installation of individual meters, to be paid for by PRASA or CRUV.

On July 24, 1990, PRASA unilaterally opened an account on behalf of the Condo-

minium and began issuing monthly bills. The account was not requested by the Condominium and the Condominium did not place a bond with PRASA. None of these bills were paid or responded to in any fashion by the Condominium. On April 3, 1991, through a letter personally delivered to Francisca Marrero, the new President of the Board of Directors of the Condominium, PRASA requested a payment in the amount of $448,872.08 for services rendered under the account. PRASA stated that the failure to pay or submit a proposal for payment would result in the suspension of the water services after 20 days. A copy of the letter to Marrero was delivered to each unit along with another letter urging the residents to take action to avoid the suspension of services.

The plaintiffs have alleged that Marrero requested on several occasions that a meeting be arranged with the Executive Director of PRASA, defendant María Margarita Irizarry, to discuss the situation and that her requests were refused. The plaintiffs charge that the failure to grant the requests for such a hearing violated their due process rights as established under Puerto Rico law.[3]

On April 24, 1991, 21 days after the delivery of the Marrero letter, water service to the Condominium was suspended. On May 3, 1991, after the Condominium agreed to place a bond in the amount of $5,000.00 to cover current monthly bills, the service was reinstated. Two months later, PRASA filed a complaint in the Superior Court of Puerto Rico for the collection of the amounts owed for water and sewer services since 1981. This complaint was thereafter filed seeking relief based on the allegedly unconstitutional 10–day deprivation of water and sewer services.

## II. Discussion

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of summary judgment in a case where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Brennan v. Hendrigan*, 888 F.2d 189, 191 (1st Cir.1989); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, there is not the slightest doubt as to whether a genuine issue of material fact exists. *Kennedy v. Josephthal & Co.*, 814 F.2d 798, 804 (1st Cir.1987); *Peckham v. Ronrico Corp.*, 171 F.2d 653 (1st Cir.1948). But see also *Medina–Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990) (court need not credit "conclusory allegations, improbable inferences, and unsupported speculation.") A "genuine" issue is one that is dispositive, and which consequently must be decided at trial. *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989); *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A "material" fact, which is defined by the substantive law, is one which affects the outcome of the suit and which must be resolved before attending to related legal issues. *Mack, supra*, 871 F.2d at 181.

Essentially, Rule 56(c) mandates that summary judgment be entered against a party who fails to establish the existence of an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Therefore, the burden is first on the movant

---

**3.** Under the Act to Establish Minimum Procedural Requirements for the Suspension of Essential Public Services, 27 L.P.R.A. § 262, all public agencies providing essential services must have an administrative procedure for the suspension of such services for nonpayment. PRASA is one of the agencies which must comply with the statute. *Accord* 27 L.P.R.A. § 262a. Among the procedures required by the statute, the agency must allow a consumer, upon receiving an ad-

verse decision by a regional official within the agency, the opportunity to have a hearing before the executive director of the agency. 27 L.P.R.A. § 262b(c); *see also* 27 L.P.R.A. § 262b(e) (if such a hearing is requested, the consumer must pay an amount equal to his average monthly bill before the hearing is held). In addition, at no time while such administrative procedures are being developed may the agency suspend the service. 27 L.P.R.A. § 262b(d).

to show "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2554. Thereafter, the burden shifts to the non-movant to provide the court, through the filing of supporting affidavits or otherwise, with "some indication that he can produce the quantum of evidence to enable him to reach the jury with his claim." *Hahn v. Sargent*, 523 F.2d 461, 468 (1st Cir.1975); *see also Brennan, supra*, 888 F.2d at 191. The non-movant cannot rest upon mere allegations or denial of the pleadings. Fed.R.Civ.P. 56(e). The non-movant must instead affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *See Anderson*, 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

At the outset, the Court notes several issues that are *not* before it in this case. First, the Court is not presented with the issue of whether PRASA was legally justified in charging the Condominium residents for water and sewer services provided despite the fact that the Condominium had never opened an account. This is an issue of state law which will undoubtedly be addressed in the collection of monies case filed in Superior Court by PRASA. Second, the Court is not presented with the issue of whether CRUV is responsible for the payment of water and sewer services provided to the Condominium based on its alleged promise to provide such services as an incentive to the Condominium residents to purchase their units. This is also an issue of state law for which the plaintiffs would have to seek redress in state court. The only issue before this Court is whether the plaintiffs suffered a deprivation of their procedural due process rights resulting from PRASA's 10–day suspension of water service to the Condominium Bahía–A.

42 U.S.C. § 1983 provides for the recovery of damages and injunctive relief against individuals and governmental bodies who deprive a plaintiff of rights, privileges, or immunities secured by the Constitution and laws of the United States.[4] To establish a cause of action under Section 1983, plaintiff must establish that defendants owed him a constitutional duty and that the duty was breached. The procedural due process clause of the Fourteenth Amendment guarantees citizens with a protected property interest the right to notice and an opportunity to be heard prior to a deprivation of such property by the government. A threshold issue in this case is whether the plaintiffs enjoyed a protectable "property" interest in the water service which was suspended. If such a property interest does not exist, the due process clause provides no protection.

As a general matter, an interest becomes a protected property interest when recognized by state statute or a legal contract between the state agency and the individual. *Accord Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In this case, the plaintiffs rely, for the proposition that they have a property interest in the continued receipt of water service, on the Supreme Court's opinion in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). In *Memphis Light*, the Court held that where state law provided that utility service could be discontinued only for cause, customers of the utility who brought suit after the termination of such services "assert[ed] a 'legitimate claim of entitlement' within the protection of the Due Process Clause." *Id.* at 11–12, 98 S.Ct. at 1561.

Puerto Rico law recognizes a property interest in the receipt of utility services which is at least equal to the interest established under the Tennessee law which was at issue in *Memphis Light*. The Puerto Rico

---

4. 42 U.S.C. § 1983 states, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to any deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Act to Establish Minimum Procedural Requirements for the Suspension of Essential Public Services provides that services can be terminated for nonpayment only after certain procedural requirements have been met. The Act further guarantees subscribers to public utility services notice and the opportunity to be heard. It is therefore clear that under Puerto Rico law a subscriber to public utility services has a protectable property interest in the continued receipt of services.

 This property interest is not extended to those receiving public utility services who are not subscribers, however. The procedures set forth in Section 262b of the Act are specifically to be provided to a "subscriber" of utility services. *Accord* 27 L.P.R.A. §§ 262b(a), 262b(b), 262b(c), 262b(e), 262b(g) and 262b(h). The statute therefore provides protections to citizens who have arranged for the purchase of public utility services through a contract with the utility. Such protections are not extended to citizens who have not entered into such a contract. In this case, the plaintiffs never entered into a contract with PRASA for the provision of water and sewer services. In fact, the plaintiffs refused to apply for service, refused to pay for the water service they received, and refused PRASA's offers of methods for arranging for the provision of services under contract. The plaintiffs seek to have this Court declare that they have a constitutional right to the continued receipt of free water services.

The facts of this case are strikingly similar to those present in *Coghlan v. Starkey,* 845 F.2d 566 (5th Cir.1988). In that case, the plaintiff was a woman who moved into a home in 1978 and at that time received water service that she assumed was included in her monthly rental. Neither she nor her landlord received any bills from the defendant utility company until she received a $206.22 late notice in February 1985. The utility company had become aware of the plaintiff's water usage in early 1984 and thereafter put her name on its computer logs. A series of disputes between the plaintiff and the utility company resulted in several temporary dis-

continuances of the plaintiff's water services. Some of these discontinuances were made after little or no notice was given. The plaintiff sued claiming "that the defendants refused to perpetuate the free water service she had enjoyed for several years." *Id.* at 567. The Court held that the plaintiff had failed to demonstrate a constitutionally protected interest in the continued receipt of free water services where no such right was established by state law or through a contract with a state agency.

In this case, the plaintiffs similarly cannot demonstrate any property interest in the water service which they lost. PRASA's Rules and Regulations, which have the force of law pursuant to 22 L.P.R.A. § 159, provide that "services will *only* be rendered in exchange for payment of the applicable tariffs and charges." Regulations of Water and Sewage ("Regs.") Art. 3.01. Services also are provided only upon the filing of a written request for service and upon the payment of a reasonable bond. Regs. Arts. 3.02 and 3.03. Failure to register an account when so requested, to place a bond or to pay for the services are causes for the denial or suspension of services. Regs. Arts. 3.03(c), 3.07 and 3.08. Clandestine users, which includes persons receiving unregistered service, are subject to immediate discontinuance of services. Art. 3.03(99) and 3.10.

The plaintiffs' efforts to counteract the defendants' arguments relating to the non-existence of a protectable property interest are feeble. They assert that under the facts of the case an "expectation" to receive continued water service developed. The plaintiffs have not, however, cited a single case or provision of law which supports the idea that an "expectation" is sufficient to create a protectable property interest.[5] The plaintiffs then cite a case for the proposition that "[a]lthough the defendants are not constitutionally obligated to establish and maintain water service for the benefit of their citizens, once having done so, a user has a legitimate claim of entitlement to continued service absent sufficient cause for termination consistent with procedural protection." *See Koger*

---

[5] In fact, in the paragraph before the plaintiffs' assertion that they had an "expectation," the plaintiffs correctly cite the rule that a property interest is derived from state regulations or a contractual relationship. They then make no effort, however, to describe how their "expectation" was derived from either of these two sources.

*v. Guarino,* 412 F.Supp. 1375, 1386 (D.Pa. 1976). This proposition, while unassailable, is of course irrelevant to the dispute presented in this case. The plaintiffs present no defense because none exists. They had no property interest in the continued receipt of water services for which they never contracted.

### III. Conclusion

Since the plaintiffs cannot demonstrate that they had a protected property interest in the water which was discontinued, they have not stated a claim for recovery under 42 U.S.C. § 1983. The Court will consider no other issues raised in the defendants' motion since the failure to demonstrate a deprivation of a constitutionally-protected interest obviates the need to determine whether the plaintiffs were afforded due process of law. The defendants' motion for summary judgment is **GRANTED.** Judgment will be entered accordingly.

IT IS SO ORDERED.