Francisca **MARRERO–GARCIA, The Other Plaintiffs that appear in Addendum Number I Attached to the Complaint Which Number 367 Persons, Plaintiffs–Appellants,**

v.

Maria Margarita **IRIZARRY, Engineer and Executive Director of the Puerto Rico Acueduct and Sewage Authority in Her Personal and Official Capacity, et al., Defendants–Appellees.**

No. 93–2098.

United States Court of Appeals, First Circuit.

Heard April 7, 1994.

Decided Aug. 24, 1994.

Jesús Hernández Sánchez, with whom Hernández Sánchez Law Firm, Ariel O. Caro Pérez and Law Offices of Alvaro R. Calderón, Jr., were on brief for appellants.

Georgiana S. Colón, with whom Edgardo Colón Arrarás, Goldman Antonetti Córdova & Axtmayer, Enrique J. Mendoza–Méndez, Law Offices of Enrique J. Mendoza Méndez, Mirta E. Rodríguez Mora, Department of Justice, Federal Litigation Div., Manuel E. Izquierdo, Arturo Trías, and Trías, Acevedo & Díaz, were on brief for appellees.

Before BREYER,* Chief Judge,
TORRUELLA and SELYA, Circuit Judges.

TORRUELLA, Circuit Judge.

Plaintiffs-appellants are a group of residents of Condominium Bahía–A, located at Calle Las Palmas in Santurce, Puerto Rico ("the residents"). The residents brought this

---

* Chief Judge Stephen Breyer heard oral argument in this matter, but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

42 U.S.C. § 1983 action for injunctive relief and damages after the defendants-appellees, the Puerto Rico Aqueduct and Sewer Authority ("PRASA") and its officers, suspended water services to the Condominium for a period of ten days. Plaintiffs allege that by suspending water services, PRASA deprived them of their property without due process of law.

The district court found that under the circumstances of this case, the residents did not have a protected property interest in continued water service and, therefore, dismissed the suit on summary judgment. This appeal followed. We affirm the district court's decision.

## I.

### STANDARD OF REVIEW

■ Federal Rule of Civil Procedure 56(c) provides for entry of summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Mack v. Great Atlantic & Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989).

■ We review a district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in the nonmoving party's favor. *Le-Blanc v. Great American Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993). "[W]e must reverse if we find that issues of fact which were adequately raised below need to be resolved before the related legal issues can be decided." *Mack*, 871 F.2d at 181.

## II.

### BACKGROUND

The facts of this case are set forth in the district court's opinion, *Garcia v. Irizarry*, 829 F.Supp. 523, 525 (D.P.R.1993). Here, we quote only those facts relevant to this appeal.

Condominium Bahía–A (hereinafter "the Condominium") is a 234–unit housing project which was originally owned and developed by the Corporación de Renovación Urbana y Vivienda ("CRUV"), a now-defunct public housing agency of the Puerto Rican Government. On November 11, 1972, CRUV opened an account with the Puerto Rico Aqueduct and Sewer Authority ("PRASA") for water and sewer services for the Condominium.[1] The PRASA account served all of the units of the Condominium through a single meter. PRASA thereafter billed and collected from CRUV for water and sewer services provided to the Condominium.

In early 1973, ownership of the Condominium was passed to its residents. A Council of Owners of the Condominium Bahía–A ("the Council") was constituted to, among other things, "administer all phases and aspects" of the Condominium including "contract[ing] all necessary services." On February 14, 1973, the Council and the Board of Directors of the Condominium notified Banco de Vivienda, the mortgagor of the property, that they had taken over the administration of the Condominium.

[The residents] have alleged that when they purchased their properties from CRUV they were told, as an incentive, that CRUV would continue to pay for all water and sewer services. CRUV in fact continued to be billed and to pay for these services until October 1, 1981, at which time CRUV requested to [sic] PRASA that it cancel the account for the Condominium.

For almost four years after the CRUV account for the Condominium was canceled, PRASA made no effort to collect from the Condominium's residents for water and sewer services provided. No explanation has been provided for this situation. On July 12, 1985, PRASA requested in writing that the Condominium, through its Board of Directors, place a bond with

---

1. PRASA is the sole provider of water services within Puerto Rico. It is a public corporation created by virtue of Law No. 33, of June 27, 1985, P.R.Laws Ann. tit. 27, § 262 *et seq.*

PRASA to register an account in its name. PRASA warned that the failure to register an account could lead to suspension of water services. On July 22, 1985, the Council answered PRASA's request by refusing to pay for any water and sewer services unless individual meters were installed for each of the apartments." (citations omitted).

829 F.Supp. at 524–25.

Between September of 1985 and December of 1989, PRASA officials had several meetings with representatives of the Council and at least one meeting with the residents of the Condominium to discuss the situation. *See id.* at 525. PRASA repeatedly "requested that the Condominium register an account and place the required bond for the water and sewer services. PRASA proposed a plan whereby the pending debt could be paid in installments. The residents rejected PRASA's proposals and again insisted on the installation of individual meters, to be paid for by PRASA or CRUV." *Id.*

On July 24, 1990, PRASA unilaterally opened an account on behalf of the Condominium and began issuing monthly bills. The account was not requested by the Condominium and the Condominium did not place a bond with PRASA. None of these bills were paid or responded to in any fashion by the Condominium. On April 3, 1991, through a letter personally delivered to Francisca Marrero, the new President of the Board of Directors of the Condominium, PRASA requested a payment in the amount of $448,872.08 for services rendered under the account. PRASA stated that the failure to pay or submit a proposal for payment would result in the suspension of the water services after 20 days. A copy of the letter to Marrero was delivered to each unit along with another letter urging the residents to take action to avoid suspension of services.

[The residents] have alleged that Marrero requested on several occasions that a meeting be arranged with the Executive Director of PRASA, defendant María Margarita Irizarry, to discuss the situation and that her requests were refused. [The residents] charge that the failure to grant the requests for such a hearing violated their due process rights as established under Puerto Rico law.[2]

On April 24, 1991, 21 days after the delivery of the Marrero letter, water service to the Condominium was suspended. On May 3, 1991, after the Condominium agreed to place a bond in the amount of $5,000.00 to cover current monthly bills, the service was reinstated. Two months later, PRASA filed a complaint in the Superior Court of Puerto Rico for the collection of the amounts owed for water and sewer services since 1981. This complaint was thereafter filed seeking relief based on the allegedly unconstitutional 10–day deprivation of water and sewer services.

*Id.* at 525–26.

The only issue before the district court was "whether [the residents] suffered a deprivation of their procedural due process rights resulting from PRASA's 10–day suspension of water service to the Condominium Bahía–A." *Id.* at 527. The district court stated that "[t]he procedural due process clause of the Fourteenth Amendment guarantees citizens with a protected property interest the right to notice and an opportunity to be heard prior to a deprivation of such a property interest by the government" and that "[a] threshold issue in this case is whether [the residents] enjoyed a protectable 'property' interest in the water service which was suspended." *Id.* The district court indicated that "if such a property interest does not

---

**2.** Under the Act to Establish Procedural Requirements for the Suspension of Essential Public Services, P.R.Laws Ann. tit. 27, § 262, all public agencies providing essential services must have an administrative procedure for the suspension of such services for nonpayment. PRASA is one of the agencies which must comply with this statute. P.R.Laws Ann. tit. 2, § 262a. The statute requires that the agency allow a consumer, upon receiving an adverse decision by a regional official within the agency, the opportunity to have a hearing before the executive director of the agency. P.R.Laws Ann. tit. 27, § 262b(c); *see also* P.R.Laws Ann. tit. 27, § 262b(e) (if such a hearing is requested, the consumer must pay an amount equal to his average monthly bill before the hearing is held). In addition, at no time while such administrative procedures are being developed may the agency suspend the service. P.R.Laws Ann. tit. 27, § 262b(d).

exist, the due process clause provides no protection." *Id.* Finding that "plaintiffs had no property interest in the continued receipt of water services for which they never contracted," the district court dismissed the case. *Id.* at 529.

# III.

## *DISCUSSION*

### A. Issues of Material Fact

■ The residents first argue that this case presented unresolved issues of material fact, which rendered the district court's grant of summary judgment erroneous. A fact is "material" when it has "the potential to affect the outcome of the suit under the applicable law." *Nereida–González v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). While this case may present unresolved issues of fact, we disagree with the residents' contention that these disputes are material to the resolution of this action. In particular, the residents contend that a determination of whether CRUV owed the residents a contractual duty to pay the water services is material to this dispute. The residents also contend that the issue of whether the residents were "clandestine users" of the water services was an unresolved issue of material fact.

We disagree with the residents' conclusion that these matters are material to the resolution of this dispute. The existence of any contractual agreement between CRUV and the residents is irrelevant to the issue before us, that is, whether at the time PRASA disconnected the water service, the residents had a protected property interest in the continued receipt of water services. A determination of whether the residents were "clandestine users" is also unnecessary to the resolution of this case as regardless of whether or not they were "clandestine users," they still have not claimed any facts that, if taken as true, would establish that they had a property interest in the continued service of water. Other allegedly unresolved

issues of fact raised by the residents are equally immaterial to this dispute.

### B. Protected Property Interest

"The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause." *Memphis Light Gas & Water Division v. Craft,* 436 U.S. 1, 9, 98 S.Ct. 1554, 1560, 56 L.Ed.2d 30 (1978). In *Board of Regents,* the Supreme Court of the United States held that:

> To have a property interest in a benefit, a person clearly must have more than an abstract need for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.... Property interests ... are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understanding that stem from an independent source such as state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ An interest becomes a protected property interest when recognized by state statute or a legal contract, express or implied, between the state agency and the individual. *Id.* The residents contend that the district court erred in concluding that they "never entered into a contract with PRASA, for the provision of water and sewer services." They argue that an implied contractual arrangement existed between PRASA and the residents by virtue of PRASA's action of opening an account on behalf of the residents, or in the alternative, as a consequence of the provision of water services by PRASA to plaintiffs for more than 20 years. Plaintiffs do not cite any provisions of Puerto Rico law nor any cases to support their position.[3] Applying basic principles of contract law, we

---

**3.** In many jurisdictions an offer does not require formalities and can be made by either written words or other conduct. E. Allen Farnsworth, *Contracts* § 3.10, at 135 (2d ed. 1990). A contract "implied in fact" is one that results from conduct alone and is distinguished from an "ex-

press" contract which results from words. *Id.* § 3.10, at 135. The residents in the present case have cited to no authority establishing that contracts "implied in fact" are valid and binding under Puerto Rico law. *See infra* note 4.

find their position untenable. Because Puerto Rico is a civil law jurisdiction we also look to its substantive law to determine whether a different outcome is forthcoming.

■ Assuming, for purposes of this appeal, that PRASA's action of opening an account and its continued rendition of water services to the residents were valid offers to contract, the residents would still be unable to establish the existence of a contract. *See Farnsworth* at 135–136 ("One who begins to perform services for another in apparent expectation of payment may be taken to be offering to furnish them for reasonable compensation."). Under Puerto Rico law, the consent of the contracting parties is an essential element of a contract.[4] P.R.Laws Ann., tit. 31, § 3391. "Consent is shown by the concurrence of the offer and acceptance of the thing and the cause which are to constitute the contract." P.R.Laws Ann. tit. 31, § 3401. Hence, an offer standing by itself will not establish the presence of a binding contract. *González Rodríguez v. Fumero,* 38 P.R.R. 497, 504, 507–08 (1928). Rather, in order to have a contract, acceptance must be made of that offer. P.R.Laws Ann. tit. 31, § 3401; *see also* José R. Vélez–Torres, *Los Contratos* at 45–47 (1986). PRASA repeatedly requested the Condominium to place a bond and to register an account. PRASA also made it clear to the residents that in order to be considered "registered users" with PRASA, they had to apply for water service and place a bond in accordance with the requirements set forth in PRASA's rules and regulations. The residents refused to do so, thereby rejecting PRASA's offer. *See* Vélez–Torres at 48–49 (an acceptance should be immediate and definitive, should coincide in all its terms with the offer, and should be made in the manner required by the offerer). An offeree's inaction or "silence in the face of the offer to sell goods is not ordinarily an acceptance, because the offeror has no reason to believe from the offeree's silence that the offeree

promises to buy." Farnsworth § 3.15, at 155; *see also* Vélez–Torres at 56–57 (silence ordinarily cannot constitute acceptance of an offer); *Coghlan v. Starkey,* 845 F.2d 566, 570 (5th Cir.1988) (neither the mere receipt of water nor the carrying of plaintiff's name on waterworks rolls as user created a contractual relationship, either express or implied, where plaintiff refused to apply for water service).

The residents also argue that the fact that PRASA was having meetings and conversations with the residents in relation to the water and sewer services being rendered evidences an implied contract. We disagree with plaintiffs' contention that those meetings suggested the existence of such a contract. These meetings were merely discussions or negotiations regarding who should pay for the installation of individual water meters in the Condominium, whether the residents were required to pay for past services rendered, and conditions for future water service. *See Coghlan* at 570 (negotiations over backbill and billing errors alone could not establish the type of property interests required to raise disconnection of water service to a deprivation of a valuable property right).

The residents next contend that the district court erred in concluding that Puerto Rico law did not confer on the residents a property interest in continued water service.

We look to Puerto Rico statutes to determine whether Puerto Rico law conferred such a property interest. *See Coghlan,* 845 F.2d at 569. Plaintiffs argue that Section 159 of the Aqueduct and Sewer Act of Puerto Rico, P.R.Laws Ann. tit. 22, § 141 *et seq.,* establishes a property interest in continued water services. Section 159 authorizes PRASA to establish rules and regulations concerning the use and conservation of water and provides, in relevant part, that the purpose for which PRASA is created is:

---

**4.** Puerto Rico law establishes that:
 There is no contract unless the following requisites exist:
 (1) The consent of the contracting parties.
 (2) A definite object which may be the subject of the contract.

 (3) The cause for the obligation which may be established.
 P.R.Laws Ann. tit. 31, § 3391.

that the health of the inhabitants of the Island of Puerto Rico shall be attained, that the health of the inhabitants of the Island shall be protected, that the water available shall be utilized in the fullest measure possible and that it shall be made available to the consumers with the greatest possible regularity and continuity.

P.R.Laws Ann. tit. 22, § 159 (1989).

The residents contend that they are "consumers" within the meaning of Section 159 and as such have a state created property interest in regular and continuous water services. We need not determine whether Section 159 creates a property interest in consumers because we do not believe that plaintiffs are "consumers." The Aqueduct and Sewer Act does not define the term "consumer." Neither do the Regulations issued by PRASA provide a definition of the term. The residents have not proffered any other authoritative interpretation of the term "consumer" which would indicate they were included within the meaning of the word. We interpret the term "consumer" in this context to be limited to persons who pay or otherwise give consideration for goods or services rendered. We believe this interpretation is consistent with the common understanding of the term. It is also consistent with a basic tenet of the Aqueduct and Sewer Authority, namely that "[t]he Authority shall render no free Services." P.R.Laws Ann. tit. 22, § 158. In the present case, the residents refused to comply with the procedures established by PRASA that would give them consumer status with respect to PRASA. They refused to register an account, place a bond or pay for water services. Therefore, they were not "consumers" as we interpret that term under Section 159.

In the alternative, the residents contend that they are "users"[5] of the aqueduct and sewer services, as that term is defined in

PRASA regulations and as such, have a property interest in continued services. The residents have not pointed to any legal authority which indicates that "users" have a property interest in water services. Rather, the residents merely argue that somehow PRASA's regulations defining "user" to include "non-subscriber-users" and "clandestine-users" give them a property interest in water services. They rely on the regulatory definition of "Aqueduct Service" as "water supply for the benefit of a subscriber *or user*" as a basis for this proposition. Regulation for Administrative–Legal Procedures of the Puerto Rico Aqueducts and Sewer Authority, Chap. II (emphasis added).

The residents have cited no authority, and we are unable to find any, indicating that regulatory definitions alone are sufficient to establish a property interest. The relevant case-law is to the contrary and suggests that these regulatory definitions cannot establish a constitutional right to receive water services. *See Coghlan,* 845 F.2d at 570 n. 3 (examination of charter creating waterworks and other sub-statutory sources including regulatory statements, for a provision establishing a right to water services is unnecessary and improper); *Gorham v. Hutto,* 667 F.2d 1146 (4th Cir.1981) (administrative guidelines are not a sufficient basis for the creation of a due process interest); *Bills v. Henderson,* 631 F.2d 1287 (6th Cir.1980) (procedural rules created by state administrative bodies cannot serve as a basis for a separate protected liberty interest); *Sterling v. Maywood,* 579 F.2d 1350, 1354 (7th Cir.1978) (where "plaintiff has neither a contractual nor a statutory basis to support her claim, ... [she] was not deprived of a due process right by defendants [sic] termination of her water service"). We therefore conclude that the regulatory definitions on which the residents rely do not

5. In its definition section, the Regulations for Administrative–Legal Procedures of PRASA provides the following definitions of "users":

User—Person who enjoys the services of aqueducts and/or sewer including any person or entity who discharges in the sanitary system, whether said person is a subscriber or not.
(a) **Subscriber user**—Person who enjoys the aqueduct and sewer services registered in the name of the Authority.

(b) **Non-subscriber user**—Person who enjoys the aqueduct and sewer services registered in the name of another person.
(c) **Clandestine user**—Person who enjoys the aqueduct and/or sewer services without being authorized for it.
Regulation for Administrative–Legal Procedures of the Puerto Rico Aqueducts and Sewer Authority, Chap. II (1989).

provide a sufficient basis for finding a property interest.

 Finally, even if the residents were able to establish that they had a protected property interest in continued water service, they were not deprived of due process. The question of what process is due is a question of federal constitutional law. *Cleveland Brd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1492–93, 84 L.Ed.2d 494 (1985). Due process generally requires "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Id.* at 542, 105 S.Ct. at 1493 (internal citation and quotations omitted). "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Zinermon v. Burch,* 494 U.S. 113, 126, 110 S.Ct. 975, 983–84, 108 L.Ed.2d 100 (1990).

First, we summarize the procedures provided. In 1986, PRASA began sending the Board of Directors of the Condominium notices warning that failure to place a bond and to register an account on behalf of the Condominium could lead to the suspension of water services. PRASA officials also met with the Board of Directors and with the residents of the Condominium to discuss the situation and proposed a plan whereby the Condominium could pay the pending debt in installments. The residents rejected the proposed plan. In 1990, PRASA unilaterally opened an account on behalf of the Condominium and began issuing monthly bills. The Condominium neither paid these bills nor responded to them in any fashion. On April 3, 1991, PRASA delivered a letter to the President of the Board of Directors of the Condominium requesting a payment in the amount of $448,872.08 for services rendered under the account. PRASA stated that the failure to pay or submit a proposal for payments would result in the suspension of water services after twenty days. A copy of the letter was delivered to each unit along with another letter urging the residents to take action to avoid the suspension of services.

In determining the adequacy of the procedures afforded the residents we balance the competing interests at stake. *Id.* These are the residents' private interest in continued water service, PRASA's interest in receiving payment for its services and the avoidance of administrative burdens, and the risk of an erroneous deprivation of water services. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976). The receipt of utility services is a necessity of modern day life and undoubtedly an important interest, however, PRASA's interest in receiving payment for its services is also significant. It would be unreasonable to expect PRASA to continue providing free services to the residents indefinitely. PRASA gave the residents notice on several occasions of its intention to discontinue services if the residents did not comply with PRASA's administrative requirements. PRASA officials also held meetings with the residents and the Board of Directors of the Condominium and discussed with them alternative solutions to the problem. Thus, the residents were given notice of PRASA's intended action, they were informed of how to resolve the situation and given several opportunities to be heard on the matter. We do not see how any additional procedures could better safeguard the residents' interests so as to justify the additional administrative burden of such procedures. We have no doubt that the residents were given more than adequate due process.

The residents were not entitled to additional procedures set forth in the Puerto Rico Act to Establish Minimum Procedural Requirements for the Suspension of Essential Public Services because this Act affords such protections only to "subscribers" of utility services. *See* P.R.Laws Ann. tit. 27, §§ 262b(a), 262b(b), 262b(c), 262b(e), 262b(g) and 262b(h); *see also infra* note 2. By failing to contract with PRASA for the provision of water and sewer services, the residents failed to achieve subscriber status. The residents' failure to comply with PRASA's administrative requirements prevents them from now claiming an entitlement to PRASA's administrative procedures. *See United States v. Charles George Trucking Co.,* 823 F.2d 685, 690–91 (1st Cir.1987) ("A party who is aware of, and chooses to ignore, an avail-

able avenue for redress cannot later be allowed to characterize his refusal to travel the road as tantamount to the road being closed—or to no road being in existence"); *Coghlan,* 845 F.2d at 569 (there is no support for the proposition that there is a constitutional right to receive utilities when the applicant refuses to comply with reasonable administrative procedures) (internal quotation and citation omitted).

### C. Motion for Sanctions

Defendants have asked this court to impose double costs and attorney's fees as a sanction for pursuing this action and further filing this appeal. Their request is denied.

*Affirmed.*