**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CERES CORPORATION,
Petitioner,

v.

WILLIE L. BRANCH; DIRECTOR, OFFICE

OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
Respondents.

No. 95-1902

On Petition for Review of an Order
of the Benefits Review Board.
(91-0445)

Argued: March 5, 1996

Decided: September 10, 1996

Before WILKINSON, Chief Judge, and LUTTIG and MICHAEL,
Circuit Judges.

_____

Affirmed and petition dismissed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Alan Rapaport, KNIGHT, DUDLEY, DEZERN &
CLARKE, P.L.L.C., Norfolk, Virginia, for Petitioner. John Harlow
Klein, RUTTER & MONTAGNA, Norfolk, Virginia, for Respon-
dents. **ON BRIEF:** Jimese L. Pendergraft, KNIGHT, DUDLEY,
DEZERN & CLARKE, P.L.L.C., Norfolk, Virginia, for Petitioner.

Gregory E. Camden, RUTTER & MONTAGNA, Norfolk, Virginia, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This worker's compensation case arises under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C #8E8E # 901 et seq. (the "Act"). Ceres Terminal, Inc. ("Ceres" or "the employer") has brought this petition seeking review of a Decision and Order of the Benefits Review Board ("the Board") in which the Board awarded compensation benefits in the nature of temporary total disability benefits to Longshoreman Willie L. Branch ("the claimant"). We are asked to decide whether the Board erred in denying Ceres a credit against compensation owed the claimant based on container royalty and vacation/holiday payments made to the claimant during his period of disability. Such payments are made to the claimant pursuant to a negotiated union contract, and the Board determined that the claimant's "receipt of these payments has no bearing on his entitlement to temporary total disability compensation under the Act."

We conclude that the Board correctly determined that Ceres is not entitled to a credit based on container royalty and vacation/holiday payments made to the claimant during his period of disability. We therefore affirm the Decision and Order of the Board and dismiss Ceres's petition.

I.

On November 21, 1987, the claimant suffered an injury to his lower back while working for Ceres. Ceres voluntarily paid the claimant temporary total disability compensation from November 22, 1987,

2

until May 2, 1990, when he returned to work with the restriction that he was not to lift more than 40 to 50 pounds. The claimant sought compensation under the Act for the period of his disability. He argued that he was entitled to a higher average weekly rate than that at which Ceres had made voluntary payments during his period of disability.[1]

The parties stipulated that in 1987 the claimant received $5,071.51 in payments from the Vacation/Holiday Fund and the Container Royalty Fund.[2] The parties further stipulated that while he was disabled the claimant received $5,045.67 in payments from these Funds in 1988 and $8,031.82 in 1989. At the hearing held before the administrative law judge ("the ALJ"), two issues were in dispute: (1) whether payments the claimant received from the Container Royalty and

---

[1] Section 8(b) of the Act, 33 U.S.C. § 908(b), provides that "[i]n the case of disability total in character but temporary in quality 66 2/3 per centum of the average weekly wage shall be paid to the employee during the continuance thereof." In contrast, section 8(e) of the Act, 33 U.S.C. § 908(e), provides that "[i]n the case of temporary partial disability resulting in decrease of earning capacity the compensation shall be two-thirds of the difference between the injured employee's average weekly wages before the injury and his wage-earning capacity after the injury in the same or another employment . . . ." Accord 33 U.S.C. § 908(c)(21) (section 8(c)(21) of the Act).

[2] Under the collective bargaining agreement between the Hampton Roads Shipping Association - International Longshoremen's Association ("HRSA/ILA") and ship carriers/employers, an employee becomes eligible for payments from the Vacation/Holiday and Container Royalty Funds if he works or receives credit for 700 hours during each contract year. If an employee is out of work due to illness or disability, he is credited with 20 hours every week he is out of work due either to temporary total or temporary partial disability.

Vacation/holiday pay benefits are administered through a trust fund established by HRSA/ILA. Vacation payments are paid in December of the contract year following the eligibility year (which ends September 30), and holiday benefits are paid in June of the contract year following the eligibility year. The container royalty payment is made by shipping companies in lieu of work lost by longshoremen due to containerization. The royalty is paid yearly in December of the contract year following the eligibility year, and the total dollar allocation is divided by the number of people who worked over 700 hours.

Vacation/Holiday Funds in the year prior to his injury should be included in the calculation of his average weekly wage,**3** and (2) whether monies paid to the claimant from these Funds during the time of his work-related disability are "wages" for which the employer can take a direct credit against future compensation benefits owed or for which the employer would be entitled to a recalculation of claimant's average weekly wage.

The ALJ held that the payments the claimant received from the Container Royalty and Vacation/Holiday Funds were properly included in determining his average weekly wage prior to his injury. The ALJ further held that the employer was entitled to a credit for the vacation/holiday and container royalty payments the claimant received while he was disabled. In so holding, the ALJ rejected the claimant's argument that the monies from the Funds were similar to bonuses, which are not treated as wages under the Act. The premise of the claimant's argument was that these monies should not be subject to the employer's credit because he did not have to work to receive these benefits. The ALJ found this argument "unpersuasive as well as confusing."

The ALJ noted that if the vacation and holiday payments were treated as bonuses they would be considered fringe benefits, not wages. He further determined that even though the claimant did not have to work to receive these benefits while he was injured, they nonetheless represented earnings paid by the employer, and to not allow the employer a credit for these payments under such circumstances would make the claimant "more than whole" at the employer's expense. Accordingly, the post-injury payments from the Funds were treated as if they were indicative of a post-injury wage-earnings capacity so as to reduce the average weekly wage and amount of temporary total disability compensation owed to the claimant.

On appeal the Board reversed the ALJ's decision to the extent that the ALJ held that Ceres is entitled to a credit for the holiday/vacation and container royalty payments the claimant received while he was

_____

**3** At the hearing the parties stipulated that if the vacation/holiday and container royalty payments are included as wages during the period prior to the claimant's disability, then his average weekly wage is $470.99.

4

disabled.**4** According to the Board, section 14(j) of the Act, 33 U.S.C. § 914(j), governs an employer's entitlement to a credit. Under this provision the employer is entitled only to a credit for its prior payments of compensation against any compensation subsequently found due. Here, the Board believed that the payments received from the Container Royalty and Vacation/Holiday Funds were not payments of compensation because under the union contract the parties did not intend to treat them as such.

Moreover, the Board determined that although the payments received from the Container Royalty and Vacation/Holiday Funds may be properly deemed wages when received while a claimant is working, the post-injury receipt of such payments does not create a wage-earning capacity or establish that a claimant is less than totally disabled. As the Board stated, the "[c]laimant is able to receive these payments during a period when he is physically incapable of working due to a provision in the union contract itself, and his receipt of payments has no bearing on his entitlement to temporary total disability compensation under the Act."

Finally, the Board rejected the employer's argument that the claimant will be made "more than whole" by his post-injury receipt of such payments. It found that because the injured claimant continued to receive the payments pursuant to the agreed upon union contract, it was "irrelevant that claimant's [pre-injury] average weekly wage included the payments . . . ."

Ceres now petitions this court for review of the Board's Decision and Order.

II.

The Board's adjudicatory interpretation of the Act is entitled to no special deference and is subject to our independent review. E.g., Pittman Mech. Cont., Inc. v. Director, OWCP, 33 F.3d 122, 125 (4th Cir. 1994). In making this review, however, Ceres concedes that we

_____

**4** The employer did not challenge the ALJ's findings that the claimant's average weekly wage before his injury properly included the holiday/ vacation and container royalty payments.

5

must construe the Act liberally in favor of the claimant, though the statute must of course be given its plain meaning. See, e.g., Voris v. Eikel, 346 U.S. 328, 333 (1953); Geddes v. Benefits Review Bd., 851 F.2d 440, 442 n.1 (D.C. Cir. 1988).

Beginning, therefore, as we must, with the statutory language of the Act, section 2(10) of the Act, 33 U.S.C. § 902(10), defines "disability" as:

> [I]ncapacity because of injury to earn wages which the employee was receiving at the time of injury in the same or any other employment . . . .

In turn, section 2(13) of the Act, 33 U.S.C. § 902(13), defines "wages" as:

> [T]he money rate at which the service rendered by an employee is compensated by an employer under the contract of hiring in force at the time of the injury, including the reasonable value of any advantage which is received from the employer and included for purposes of any withholding of tax under subtitle C of the Internal Revenue Code of 1954 [26 U.S.C.A. § 3101 et seq.] (relating to employment taxes).

Section 2(13) then goes on to expressly exclude from the definition of "wages":

> [F]ringe benefits, including (but not limited to) employer payments for or contributions to a retirement, pension, health and welfare, life insurance, training, social security or other employee or dependent benefit plan for the employee's or dependent's benefit, or any other employee's dependent entitlement.

Also, as noted above, see supra at 3 n.1, section 8(b) of the Act, 33 U.S.C. § 908(b), provides that "[i]n the case of disability total in character but temporary in quality 66 2/3 per centum of the average weekly wage shall be paid to the employee during the continuance thereof." In contrast, section 8(e) of the Act, 33 U.S.C. § 908(e), pro-

6

vides that "[i]n the case of temporary partial disability resulting in decrease of earning capacity the compensation shall be two-thirds of the difference between the injured employee's average weekly wages before the injury and his <u>wage-earning capacity after the injury</u> in the same or another employment . . . ." (Emphasis supplied.) <u>Accord</u> 33 U.S.C. § 908(c)(21) (section 8(c)(21) of the Act).

In light of this statutory language, Ceres makes three interrelated arguments on appeal. First, though Ceres concedes that the claimant was totally disabled in a medical sense during his period of disability, Ceres nonetheless argues that the question of the extent of the claimant's disability is an economic as well as a medical concept. Second, Ceres argues that the payments received by the claimant from the Container Royalty and Vacation/Holiday Funds during his period of disability are "wages" under the Act. In particular, Ceres points out that the payments the claimant received from the Funds prior to his injury are treated as "wages," the payments received post-injury are reported on his W-2 forms under "wages, tips, other compensation," and the payments received post-injury are subject to federal withholding. Third, Ceres argues that because the claimant received payments from the Funds post-injury, the claimant had a "wage-earning capacity" during his period of disability. Therefore, according to Ceres, the claimant is not entitled to temporary total disability compensation under the Act, and it is entitled to a credit for the monies the claimant received from Funds.[5]

_____

[5] Ceres does not argue that the payments are an advance of "compensation," which (if true) would allow it to take a credit under section 914(j). <u>See</u> 33 U.S.C. § 914(j) (section 14(j) of the Act) (an employer is entitled to reimbursement of any unpaid installment or installments of compensation due "[i]f the employer has made advance payments of compensation . . ."). Although the Board relied in part upon section 14(j) in reversing the ALJ's decision, we need not reach the question of whether section 14(j) precludes Ceres from taking a credit under the circumstances presented here because we conclude that the payments received by the claimant from the Container Royalty and Vacation/Holiday Funds during his period of disability may not be treated as "wages" and that the payments do not create a "wage-earning capacity."

7

A.

Because of the Act's focus on a claimant's "wage-earning capacity after the injury," we agree with Ceres to the extent it argues that the question of the claimant's disability is an economic as well as a medical concept. As we stated in See v. Washington Metro. Area Trans. Auth., 36 F.3d 375, 381 (4th Cir. 1994):

> In distinguishing between total and partial disability, the Act looks primarily at the claimant's "wage-earning capacity." See, e.g., 33 U.S.C. § 908 (e), (h) (1988). Because of the statutory focus on "the claimant's capacity for work, not actual employment," [Newport News Shipbuilding & Dry Dock Co. v.] Tann, 841 F.2d [540,] 543[(4th Cir. 1988)] (emphasis in original), disability under the [Act] is "an economic, rather than purely physical concept." Newport News Shipbuilding & Dry Dock Co. v. Director, OWCP, 592 F.2d 762, 765 (4th Cir. 1979); see also Diamond M. Drilling Co. v. Marshall, 577 F.2d 1003, 1006 (5th Cir. 1978) (total disability is possible under [the Act] when claimant is "physically capable of performing certain work but otherwise unable to secure that particular kind of work")."The statute's equation of disability with `wage-earning capacity' reflects a concern for the economic consequences of job-related injuries . . . ." McBride v. Eastman Kodak Co., 844 F.2d 797, 799 (D.C. Cir. 1988).

Therefore, we also agree that if the payments from the Funds post-injury are "wages," then the claimant has a"wage-earning capacity" and the claimant's "disability" is less than"total in character." Section 8(e) of the Act, 33 U.S.C. § 908(e), would then apply, and Ceres would be entitled to a credit. Of course, the opposite is true as well: if such payments are not "wages," then they can not create a "wage-earning capacity" in the claimant and his disability is "total in character." Section 8(b) of the Act, 33 U.S.C. § 908(b), would then apply, and Ceres would not be entitled to a credit. Accordingly, to determine whether section 8(b) or section 8(e) governs here, we must determine whether the payments received by the claimant post-injury are "wages" within the meaning of the Act.

8

We now turn to that inquiry.

B.

The claimant argues that payments received from the Funds post-injury are not "wages," but rather the payments are received as part of a disability plan under the union contract which falls outside of the Act's compensation scheme. We agree.

Pursuant to the union contract, when an employee is working, he is entitled to payments from the Funds once he has <u>worked</u> 700 hours in the contract year. Such payments are clearly "wages" within the meaning of the Act because they are payments for "<u>service[s] rendered</u> by an employee . . . under the contract of hiring in force at the time of the injury . . . ." 33 U.S.C. § 902(13) (section 2(13) of the Act) (emphasis supplied).

When, however, an employee is unable to work because of a disability, the union contract provides that the employee is credited with 20 hours every week the employee is out of work. And once the employee reaches 700 hours, the employee is again entitled to payments from the Funds. Thus, when an employee is physically disabled, the employee is not entitled to payments from the Funds based on the hours of work performed in the contract year, but rather the employee is entitled to payments from the Funds based on the length of his disability. Indeed, as the Board pointed out, the "[c]laimant is able to receive payments during his period of disability when he is physically incapable of working due to a provision in the union contract itself . . . ." It is therefore clear that an employee, post-injury, does not receive payments from the Funds based on "<u>service[s] rendered</u> by an employee . . . under the contract of hiring in force at the time of the injury . . . ." The employee receives payments because he is disabled, not because he has rendered services.

As a consequence, while payments received from the Funds are properly treated as "wages" when the employee is working, such payments are not "wages" when received post-injury. We therefore hold that the claimant's receipt of payments from the Funds while disabled are not "wages" within the meaning of section 2(13) of the Act, 33 U.S.C. § 902(13). As such, the claimant's "disability" was "total in

9

character," and he is entitled to compensation benefits pursuant to section 8(b) of the Act, 33 U.S.C. § 908(b).

Moreover, we agree with the Board that this result does not cause any unfairness or make the claimant "more than whole." While it is true that we are treating payments received pre-injury as "wages" and payments received post-injury as "benefits," that result is dictated by the union contract. Therefore, if Ceres wishes to receive a credit in future cases, it should attempt to negotiate for a modification of the union contract. Under the existing contract, however, it is clear that the payments received by the claimant post-injury are considered part of a disability plan and are not "wages" within the meaning of the Act.

Finally, we disagree with Ceres that the payments must be treated as "wages" because the payments from the Funds were shown on claimant's W-2s as "wages, tips, other compensation," and because the payments may have been subject to income tax withholding. Under section 3121(a)(4) of the Internal Revenue Code the definition of "wages" does not include:

> any payment on account of sickness or accident disability, or medical or hospitalization expenses in connection with sickness or accident disability, made by an employer to, or on behalf of, an employee after the expiration of 6 calendar months following the last calendar month in which the employee worked for such employer[.]

Accord I.R.C. § 3306(b)(4).

Here, the claimant was credited with 20 hours for every work-week missed, and he was not entitled to payments from the Funds because of his disability unless he received credit for 700 hours. That is, the claimant had to be injured for at least 35 weeks before he was entitled to payment, a period of time greater than six months. We therefore believe that the payments would not be treated as "wages" under section 3121 of the Internal Revenue Code. And, accordingly, they should not be treated as "wages" within the meaning of the Act.

10

III.

The decision and order of the Board are affirmed, and Ceres's petition is dismissed.

AFFIRMED AND PETITION DISMISSED

11